Edward W. **COOKE**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 14870.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 9, 1959.

Decided Feb. 25, 1960.

Mr. John A. Shorter, Jr., Washington, D. C., for appellant.

Mr. Louis M. Kaplan, Asst. U. S. Atty. at time of argument, with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee. Mr. Harry T. Alexander, Asst. U. S. Atty., and Mr. Charles W. Halleck, Asst. U. S. Atty., at the time the record was filed, also entered appearances for appellee.

Before EDGERTON, BAZELON and WASHINGTON, Circuit Judges.

BAZELON, Circuit Judge.

On appellant's claim of self-defense, the jury acquitted him of the charge of assault with a dangerous weapon. D.C. Code § 22–502 (1951). But it found him guilty on the companion charge of carrying the pistol which he used to defend himself. D.C.Code § 22–3204 (Supp. VII 1959). The trial judge instructed the jury that appellant was guilty of carrying a dangerous weapon if he (1) carried the gun in a public place, and (2) it was not licensed. Appellant's primary point on this appeal is that the court erred in

refusing to instruct the jury that he could lawfully carry the gun in order to defend himself from a reasonably entertained fear of imminent bodily harm. The nub of his argument is that a conviction for carrying an unlicensed gun, following his acquittal on the assault charge, nullifies his right to self-defense. Expressed another way, he claims that his acquittal on the assault count conclusively demonstrates that he was carrying the gun for a lawful purpose.

There does appear to be an inconsistency between acquitting a man of assault on grounds of self-defense, and convicting him for carrying the instrument used in that defense. But the statute flatly states that "No person shall within the District of Columbia carry * * * except in his dwelling house or place of business * * * a pistol, without a license * * *." D.C.Code § 22–3204 (Supp. VII 1959). As appellant correctly points out, we have previously held that one is not guilty of carrying an unlicensed gun during the period it is actually used in self-defense, Wilson v. United States, 1952, 91 U.S.App.D.C. 135, 198 F.2d 299.[1] But we have made it clear that this doctrine is inapplicable where one anticipating harm carries a gun for an hour or more before the danger actually arises. Dandridge v. United States, 1959, 105 U.S.App.D.C. 157, 265 F.2d 349.[2]

We think the facts of this case are more analogous to Dandridge. Appellant and his assailant, one Royster, had engaged in several heated encounters in the year prior to the shooting. Shortly before their last encounter, appellant had observed Royster loitering in the neighborhood and, fearing attack, he, appellant, requested police protection on several occasions as he went about his business. He testified that on the day of the offense, he repeatedly saw Royster in the neighborhood, that Royster had used abusive language and threatened to get between him and the door of his shop, that he requested two police officers to "straighten Royster up," and that they refused, saying they were "off duty" or were going to see that "nothing happened." About 7:00 p. m. that evening, appellant left his shop to accompany his wife home. He put a gun in his pocket because he was afraid of Royster. He stopped briefly to speak with some friends in parked cars along the street. Within a few minutes, Royster was upon him with a stick and appellant shot him in the leg.

In argument before the court, appellant's counsel pointed out that this case had an important factor which was absent in both Dandridge and Wilson, namely, appellant's request for police protection. He suggests that, even if we do not find Dandridge distinguishable, we should still hold that the statute does not apply where, as here, (1) the defendant was exposed to serious current threat, (2) he did not have time to get a license, and (3) he made a serious attempt to secure police protection. This is a very appealing suggestion. But it must be directed to the legislature.

■ Congress did not express itself on the possibility that an exercise of the

1. Wilson, accompanied by two women, stopped his car in front of a house. One of the women got out of the car and went in. Wilson also got out and seated himself on the right front fender of the automobile. Soon after, the woman emerged from the house followed by a disorderly group of men and women who began to attack Wilson. He retreated to the other side of the car, opened the door, pushed the driver's seat up, and obtained a pistol which was on the floor of the car. As he backed away from his pursuers, Wilson fired three shots, inflicting slight wounds on the victims. We found that he was not in violation of the statute at the time he used the gun since "the exigencies of the occasion justified Wilson in obtaining a weapon and using it in self defense." But we also held that he could be found guilty of prior possession without a license if the jury found that the gun was on or about his person while it was under the car seat.

2. Dandridge, after his difficulty with the complainant, took his pistol from his home, put it in his waistband, and went across the street, where he sat on a neighbor's steps for over an hour before using it in self-defense. Cf. Williams v. State, 1914, 15 Ga.App. 311, 82 S.E. 817.

common law right of self-defense in certain circumstances might involve a violation of the statutory prohibition against carrying an unlicensed pistol. But in light of the history of anti-weapons legislation evidencing the clearest intent to drastically tighten the ban on carrying dangerous weapons, we cannot assume that Congress was unaware of this apparent possibility.[3] It is not suggested that this policy raises constitutional doubts. We therefore hold that the trial court properly refused the requested instruction.

 Appellant also contends that the court erred in failing to instruct the jury on "criminal intent." Presumably he means that the jury should have been told that he had to carry the gun with intent to use it unlawfully. He relies upon Levine v. United States, 1958, 104 U.S. App.D.C. 281, 261 F.2d 747; and Mullen v. United States, 1958, 105 U.S.App.D.C. 25, 263 F.2d 275, which hold that criminal intent, or an evil state of mind, is an essential ingredient in crimes derived from the common law even though the modern statutory definition fails to so specify. But carrying a dangerous weapon without a license was not an offense at common law. 3 Burdick, Law of Crime § 742 (1946). All that is needed is an intent to commit the proscribed act.

State v. Cortese, 1938, 104 N.J.L. 312, 140 A. 440, 442.

Although the trial judge did not charge the jury that it must find that Cooke intended to carry an unlicensed gun in a public place, appellant's trial counsel made no objection. Since Cooke testified that he intentionally put the gun in his pocket before leaving the shop, this omission from the charge does not constitute plain error.

Affirmed.

---

3. In 1871 a law was enacted for the District of Columbia prohibting the carrying of dangerous weapons and imposing a fine of between twenty to fifty dollars. Laws of the District of Columbia, Part II, p. 33 (1871–72).

The statute was amended after the turn of the century to make it unlawful to conceal a gun about one's person or to carry it openly *with the intent to use it unlawfully.* Violation carried the enlarged penalty of a fifty to five hundred dollar fine or one year in prison, or both. Code of Law for the District of Columbia, Anno., § 855 (1910).

In 1932 Congress repealed this statute and enacted what is substantially the present § 22–3204. 47 Stat. 651. The penalty was increased to a thousand dollar fine or one year in jail, or both. The requirement that the gun be carried with intent to use it illegally was eliminated.

In 1943 the statute was amended to prohibit the carrying of an unlicensed pistol openly as well as concealed. 57 Stat. 586.

In 1958 Congress provided that any person who violates § 22–3204 and has been previously convicted of a felony may be imprisoned up to ten years. 67 Stat. 94.

In 1953 Congress also strengthened the anti-weapons legislation by making it unlawful to possess a knife or similar instrument "with intent to use unlawfully." D.C.Code § 22–3214(b) (Supp. VII, 1959). The Municipal Court of Appeals has held that this provision does not repeal by implication those portions of § 22–3204 which make it illegal to carry many of the same weapons without regard to intent. United States v. Shannon, D.C. Mun.App.1958, 144 A.2d 267.