Tyrone HURT, Appellant,

v.

UNITED STATES, Appellee.

No. 7035.

District of Columbia Court of Appeals.

Argued June 27, 1974.

Decided April 29, 1975.

John A. Keats, Washington, D. C., appointed by this court, for appellant.

E. Lawrence Barcella, Jr., Asst. U. S. Atty., with whom Earl J. Silbert, U. S.

Atty., John A. Terry and John T. Kotelly, Asst. U. S. Attys., were on the brief for appellee.

Before KERN, NEBEKER and HARRIS, Associate Judges.

PER CURIAM:

This is an appeal from a conviction of first degree murder (D.C.Code 1973, § 22–2401) and carrying a concealed weapon (D.C.Code 1973, § 22–3204) after a jury trial. Several errors are assigned by appellant which will be discussed, *infra*. Based on our consideration of the record in light of the applicable case law, we affirm.

The evidence shows that appellant, Cornelius Parker (the deceased), James Johnson, Joe Murphy, William Russell and several others were gambling in a row house in the early morning hours of September 27, 1971. Appellant "shot" the dice while Murphy "backed" the game. Murphy and appellant were winning at the expense of Russell, Parker, and Johnson. After the game broke up at approximately 6 a. m., the group went outside to wait for Russell's girl friend to return with his car so he could go home for money to cover his losses. Appellant and Parker got into a heated argument about appellant's refusal to give or lend Parker $20. Parker hit appellant in the mouth and kicked him in the stomach before Johnson and Russell finally separated them. The group momentarily dispersed when a police cruiser passed by, but Parker and appellant soon resumed fighting. Johnson intervened again on Parker's behalf and argued with appellant. Johnson thereupon went to his car and opened the trunk, as if to look for a weapon, but was stopped by Russell. Both Johnson and Parker apparently threatened appellant; Parker, in particular, telling appellant he was going to take his money and kill him or have him killed. Appellant then ran from the scene saying he would return.

Approximately 45 minutes later those still remaining at the scene drove in Johnson's car a few blocks away and returned in 10 or 15 minutes. Meanwhile, appellant had retrieved a pistol he had hidden earlier and had gone back to the scene where he waited approximately a half hour for the others to return—ostensibly for Murphy to give him his share of the winnings. Appellant testified he needed the pistol to protect himself because Johnson was much bigger and Parker much stronger than he. Appellant also testified that he was aware of Parker's reputation for violence.

Johnson drove up, with Parker as a passenger. As he did, Johnson saw appellant sitting on the steps of a house with his hands in his pockets. Johnson warned Parker that appellant might have a gun, but Parker insisted that Johnson stop in front of appellant. Parker and Johnson then started to alight from the car and appellant asked Parker if he was still mad at him about the money or still thought he was going to do something to him. When Parker replied affirmatively, appellant drew his pistol and fired six shots, killing Parker.

Johnson testified that appellant was approximately six feet from Parker when the shooting began. He also stated that appellant fired at least two of the first four shots at him (Johnson), walked to the front of the car towards Johnson and then returned to his original position where he fired two or three more times.[1] This homicidal episode lasted approximately a minute to a minute and a half. Parker did not threaten appellant either verbally or physically just before the actual shooting itself, and appellant did not warn Parker not to come towards him. The police, who arrived at approximately 8:15 a. m., found no weapons on or around Parker's body.

---

1. Although Johnson testified that appellant aimed the first few shots at him, an autopsy revealed six entry, two re-entry, and five exit wounds in Parker's body. The police also found bullet holes in the tire of Johnson's car and in the passenger side headrest.

At trial appellant claimed self-defense and now assigns error in the trial court's striking the testimony of his witness, Edward Brown. Brown was the fourth in a series of witnesses presented by appellant to establish Parker's reputation for violence. After Brown had testified about an altercation he had with Parker in the early 1960's, he began to recount an incident in which he had allegedly almost been hit by a shot fired by Parker. Brown's testimony was quite vague—he could not even remember the season or the year in which this event took place, stating only that it had occurred sometime in the 1970's. The trial court then interrupted, excused the jury, conducted an interrogation of the witness out of the presence of the jury, and finally declared a recess in an effort to give the defense an opportunity to refresh Brown's memory. Ultimately, the court struck his testimony and appellant's counsel below did not object.

■■ Although evidence at trial of the deceased's violent character is admissible where a claim of self-defense is raised, *see* United States v. Burks, 152 U.S.App.D.C. 284, 470 F.2d 432 (1972); Evans v. United States, 107 U.S.App.D.C. 324, 277 F.2d 354 (1960), the number of such witnesses permitted to testify can be controlled in the trial court's discretion so as to limit cumulative testimony. 1 J. Wigmore, Evidence § 198 at 676–77 (3d ed. 1940). This is such a case. Additionally, the admission of Brown's testimony here—vague and uncertain as it was about a supposedly recent event—would have denied the government an opportunity for meaningful cross-examination. Under the circumstances, we find no error.

Appellant's second assignment of error is the trial court's alleged departure from its neutral judicial role and assumption of the direction of the prosecution's case, thereby denying appellant his right to a fair trial.

■ Initially, we note that appellant raises this issue for the first time on appeal. He must thus prove clear prejudice

to his defense in order to justify reversal of his conviction. Springs v. United States, D.C.App., 311 A.2d 499, 500 (1973); United States v. Green, 139 U.S. App.D.C. 75, 429 F.2d 754 (1970); United States v. Doran, 483 F.2d 369 (1st Cir. 1973).

■ Without discussing seriatim each instance cited by appellant as an example of unwarranted and prejudicial interference by the trial court, suffice it to say that we conclude the trial court's questions and directions in the complete context in which they were asked or given were "neither hostile nor were they coupled with critical remarks that would undoubtedly tend to prejudice a jury." Springs v. United States, *supra* at 500. Moreover, even if the trial court did err in some of its rulings and interventions, we must "guard against the magnification on appeal of instances which were of little importance in their setting." Glasser v. United States, 315 U.S. 60, 83, 62 S.Ct. 457, 471, 86 L.Ed. 680 (1942); *accord*, Jackson v. United States, 117 U.S.App.D.C. 325, 329 F.2d 893 (1964).

■ Appellant also assigns error in the trial court's refusal to charge the jury with regard to self-defense as a defense to carrying a pistol without a license (No. 4.-81(d), Criminal Jury Instructions for the District of Columbia (1972 ed.)). The United States Court of Appeals for the District of Columbia Circuit observed in Cooke v. United States, 107 U.S.App.D.C. 223, 224, 275 F.2d 887, 888 (1960), that this instruction is inapplicable where one anticipating harm carries a pistol in public for a period of time *before* the actual danger arises as opposed to when one actually uses it in self-defense. *See also,* Dandridge v. United States,/ 105 U.S.App.D.C. 157, 265 F.2d 349 (1959); Wilson v. United States, 91 U.S.App.D.C. 135, 198 F.2d 299 (1952). We believe *Cooke, Dandridge* and *Wilson* are dispositive of this issue and find no error in the trial court's failure to give the instruction requested by appellant.

■ Appellant's final assignment of error is that the trial court's instructions to the jury on malice [2] and lack of instruction on provocation and manslaughter, to which he made objections, were erroneous. Appellant argues that the trial court's definition of malice as "a state of mind showing a heart regardless of social duty" rather than as "a state of mind showing a heart regardless of the life and safety of others," as suggested by United States v. Bush, 135 U.S.App.D.C. 67, 416 F.2d 823 (1969) and as contained in Nos. 4.21 and 4.23 of the Criminal Jury Instructions for the District of Columbia (1972 ed.), was reversible error. We must consider the circumstances of the offense and the court's instructions in context, however, to determine whether appellant is entitled to reversal here.[3] We conclude he is not. The trial court's instructions, though contrary to the suggestion in *Bush,* clearly informed the jury that it must find appellant acted with a man-endangering state of mind [4] before it could find that he acted with malice. On the particular facts of this case, we are persuaded that the trial court's language had no influence on the verdict or superseded or detracted from its other definitions of malice. Otherwise, this court would have to conclude as a matter of law that the jury could reasonably have found that shooting another person six times at close range during a period of a minute to a minute and a half was an act not done with a mind "regardless of the life or safety of another" but only an act done with a mind "regardless of social duty." The jury's finding of first degree murder belies this proposition.

■ Appellant's claim that the trial court erred in not instructing the jury on provocation and manslaughter is not supported by the evidence. Appellant's requested instruction, Standard Instruction No. 4.23, even undermines his argument. There, adequate provocation is defined as such as

> might naturally induce a reasonable person in the passion of the moment to lose self-control and commit the act on impulse and without reflection. A blow or other personal violence . . . may constitute adequate provocation. But a trivial or slight provocation, entirely disproportionate to the violence of the retaliation, is not adequate provocation. Mere words standing alone, no matter how insulting, offensive, or abusive, are not adequate provocation. . . . [No. 4.23, Criminal Jury Instructions for the District of Columbia (1972 ed.).]

In this case the only activity that could possibly have constituted adequate provocation for a manslaughter instruction occurred approximately 45 minutes prior to the homicide. Appellant, by his own admission, retrieved a pistol after his fight with Parker, and returned to the scene where he waited for approximately 30 minutes and then shot Parker. The reason appellant gave for shooting him was his own fear and he "wasn't going to take no chance at that particular time." Certainly this was inadequate provocation for the shooting.

■ In addition, the jury's verdict dissolves appellant's argument. By its finding of first degree murder, the jury implicitly acknowledged the existence of premedita-

---

2. The first-degree murder count in the indictment charged appellant "purposely and with deliberate and premeditated *malice,* shot Cornelius Parker." (Emphasis added.)

3. United States v. Martin, 154 U.S.App.D.C. 359, 475 F.2d 943 (1973); United States v. McCall, 148 U.S.App.D.C. 444, 460 F.2d 952 (1972); United States v. Johnson, 140 U.S. App.D.C. 54, 58 n. 27, 433 F.2d 1160, 1164 n. 27 (1970); United States v. Porter, 139 U.S.App.D.C. 19, 429 F.2d 203 (1970);

Bynum v. United States, 133 U.S.App.D.C. 4, 408 F.2d 1207 (1968), cert. denied, 394 U.S. 935, 89 S.Ct. 1211, 22 L.Ed.2d 466 (1969).

4. Carter v. United States, 141 U.S.App.D.C. 259, 264 n. 26, 437 F.2d 692, 697 n. 26 (1970), cert. denied, 402 U.S. 912, 91 S.Ct. 1393, 28 L.Ed.2d 655 (1971), wherein the court pointed out that its purpose in changing the malice instruction in *Bush* was to convey precisely this standard to the jury.

tion and deliberation which cannot coexist with adequate provocation. As the United States Court of Appeals for the District of Columbia Circuit said in *Belton* where it rejected a claim of error in the denial of a requested manslaughter instruction:

> Here there was no testimony "fairly tending" to bear on manslaughter . . . . It is rather a case where the charge requested was objectionable as based on speculation without foundation in the evidence. . . .
>
> \*　\*　\*　\*　\*　\*
>
> In reaching our conclusion that there was no reversible error, we again emphasize that the jury's verdict went beyond second degree murder; this weakens any sense of prejudice from failure to charge manslaughter. [Belton v. United States, 127 U.S.App.D.C. 201, 207–08, 382 F.2d 150, 156–57 (1967).]

We also find that appellant never specifically requested a manslaughter instruction at trial and thus did not preserve this issue for appeal. Even if he had, we would not hold the failure to give such an instruction reversible error in the circumstances of this case.

Affirmed.