UNITED STATES, Appellant,

v.

**Earl E. WALKER, Appellee.**

**No. 12036.**

District of Columbia Court of Appeals.

Argued Oct. 18, 1977.

Decided Dec. 20, 1977.

Jonathan Lash, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease and Stephen R. Spivack, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellant.

David M. Bullock, Washington, D. C., for appellee.

Before KELLY, KERN and YEAGLEY, Associate Judges.

KERN, Associate Judge:

Appellee was charged with two counts of involuntary manslaughter and one count of carrying a pistol without a license (D.C. Code 1973, § 22–3204). The government appeals from the trial court's dismissal of the count in the indictment which charged that appellee

> feloniously, in perpetrating and attempting to perpetrate the crime of carrying a pistol without a license, involving danger of injury, did shoot Ernestine Curry with a pistol, thereby causing injuries from which the said Ernestine Curry died . . . .[1]

At the hearing on appellee's motion to dismiss this count of the indictment, the government's proffer of evidence was that appellee, while carrying a pistol without a license, dropped it in the stairwell of an apartment building, and that the gun went off, fatally wounding a bystander. Appellee's proffer was that a firearms expert had determined that when the hammer of the pistol was not cocked, it would fire on impact only if dropped at a particular angle. These proffers constitute the only explanation in the record of the incident underlying the indictment.

■ There is no statutory definition of manslaughter in this jurisdiction;[2] this court had occasion in *United States v. Bradford,* D.C.App., 344 A.2d 208 (1975), however, to review at length the law of manslaughter in the District of Columbia. In respect to involuntary manslaughter, we said:

> Involuntary manslaughter is an unlawful killing which is unintentionally com-

---

1. Another count of the indictment charged appellee with involuntary manslaughter in shooting Curry "unlawfully, feloniously, and with gross negligence" thereby fatally injuring her.

2. The Code specifies only the punishment for manslaughter. D.C.Code 1973, § 22–2405.

mitted. By unintentionally it is meant that there is no intent to kill or to do bodily injury. The crime may occur as the result of an unlawful act which is a *misdemeanor involving danger of injury.* . . . The requisite intent in involuntary manslaughter is supplied by the intent to commit the misdemeanor, or by gross or criminal negligence . . ..

\* \* \* \* \* \*

The state of mind in involuntary manslaughter is characterized, on the one hand, by a lack of intent to cause death or injury and, on the other, by a lack of awareness of the consequences of the act amounting to an unreasonable failure of perception [criminal negligence] . . . *or the intention to do an act which is a misdemeanor and is in some way dangerous.* . . . [*Id.* at 215; emphasis added, footnote omitted.]

We defined the elements of involuntary manslaughter as: "(1) an unlawful killing of a human being (2) with either (a) *the intent to commit a misdemeanor dangerous in itself* or (b) an unreasonable failure to perceive the risk of harm to others." *Id.* at 216; emphasis added.

This appeal therefore presents for our determination the question whether the unlawful act of carrying a pistol without a license is also a dangerous act. *Id.* at 216 n.24. The pertinent statute provides:

No person shall within the District of Columbia carry either openly or concealed on or about his person, except in his dwelling house or place of business or on other land possessed by him, a pistol, without a license therefor issued as hereinafter provided . . .. [D.C.Code 1973, § 22–3204.]

Appellee, citing *Mitchell v. United States,* D.C.App., 302 A.2d 216, 217 (1973), argues (Brief at 6) that the plain intent of Section 3204 is to stop the prohibited conduct *before*

danger of injury arises, and that such danger is not a necessary concomitant of the offense.[3] Appellee proceeds to illustrate what he deems to be the "essence" of the offense of carrying a pistol without a license by the following hypothetical (Brief at 6–7):

[T]wo persons [are] walking peaceably on a public street carrying holstered pistols. One . . . has a license to carry a pistol, but the other has *no* license. The second person is violating section 3204, and the first is *not.* Yet there is no difference between them in terms of the danger presented to others. [Emphasis added.]

■ Appellee's hypothetical and argument notwithstanding, we conclude that carrying a pistol without a license exposes the community to such inherent risk of harm that when death results, even though an unintended consequence, the defendant may be nonetheless charged with involuntary manslaughter. Appellee in the instant case was carrying a loaded handgun, which, so far as the record shows, had no purpose other than its use as a weapon. *See Scott v. United States,* D.C.App., 243 A.2d 54, 56 (1968). Implicit in the statutory proscription of carrying a pistol without a license outside the possessor's "dwelling house or place of business" is a congressional recognition of the inherent risk of harm to the public of such dangerous instrumentality being carried about the community and away from the residence or business of the possessor. Indeed, the history of the statute evinces congressional concern with the need to control the introduction of pistols into the community by licensing all those who do so.

The statutory section prohibiting the carrying of a pistol without a license was part of a comprehensive firearms control statute, originally approved by Congress in 1932, 47 Stat. 650, ch. 465, § 4 (1932), and

---

**3.** In *Mitchell* we concluded that "the object of the statute [Section 3204] is not to prohibit the carrying of a pistol with intent to use it as a

weapon, but to *forestall the temptation to use it* as such by forbidding possession of such an

later strengthened.[4] As the federal circuit court of this jurisdiction has said, after surveying the history of anti-weapons legislation in the District of Columbia, the Act "evidenc[es] the clearest intent to drastically tighten the ban on carrying dangerous weapons." *Cooke v. United States,* 107 U.S.App.D.C. 223, 225, 275 F.2d 887, 889 (1960). *See* H.R.Rep.No.767, 72d Cong., 1st Sess. 2 (1932); S.Rep.No.575, 72d Cong., 1st Sess. 2 (1932); *see also United States v. Shannon,* D.C.Mun.App., 144 A.2d 267, 268–69 (1958); *Brown v. United States,* D.C. Mun.App., 66 A.2d 491, 493 (1949).

Additionally, we think it significant in assessing the dangerousness *vel non* of the unlawful act of carrying a pistol without a license that Congress has expressly required one who seeks the license to be "a suitable person to be so licensed." D.C.Code 1973, § 22–3206. Issuance of these licenses is the responsibility of the Chief of the Metropolitan Police Department, *id.,* and is subject to restrictive regulations which, among other things, require the applicant to be of sound mind, to be without a prior criminal record, not to be an alcoholic or user of narcotics, to "be trained and experienced in the use, functioning and safe operation of the pistol," and finally, "to be free from physical defects which would impair his safe use of the weapon." 21 D.C.Reg. 413–21 (1974).

■ Thus, taking up appellee's hypothetical of the two persons carrying pistols on a public street, one of whom is licensed and the other of whom is not, we conclude that Congress intended to preclude the non-licensee from being on the street with his weapon because of the danger he posed to the community as a result (1) of the inherent dangerousness of the weapon he carried, and (2) of the absence of any evidence of his capability to carry safely such a dangerous instrumentality.

■ To summarize, this court in *Bradford* defined involuntary manslaughter as the killing of another "as the result of an unlawful act which is a misdemeanor involving danger of injury." *Bradford, supra* at 215. In *Mitchell,* we declared the object of Section 3204, which proscribes carrying a pistol outside the residence or place of business without a license, to be "to forestall the temptation to use it [the pistol] as such," thereby recognizing the danger of injury arising from the unlicensed carrying of the pistol. *Mitchell, supra* at 217. We now hold that a charge of violation of Section 3204 resulting in the shooting and death of another validly charges involuntary manslaughter because the misdemeanor of carrying a pistol without a license is dangerous in and of itself. Accordingly, the trial court's order must be reversed and the count at issue restored to the indictment.

*So ordered.*

---

object *outside the possessor's home or place of business."* 302 A.2d at 217; emphasis added.

**4.** 57 Stat. 586, ch. 296 (1943); 61 Stat. 743, ch. 469 (1947); 67 Stat. 94, ch. 159, § 204(c) (1953).

Indeed, the Council of the District of Columbia has further restricted possession by enactment of the Firearms Control Regulations Act of 1975, Act 1–142, July 23, 1976.