**James E. LOGAN, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 13351.**

District of Columbia Court of Appeals.

Argued March 15, 1979.

Decided June 6, 1979.

---

John A. Shorter, Jr., Washington, D. C., with whom Bernadette Gartrell, Washington, D. C., was on the brief, for appellant.

F. Joseph Warin, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry and Peter E. George, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KERN, HARRIS and FERREN, Associate Judges.

HARRIS, Associate Judge:

Appellant was convicted by a jury of carrying a pistol without a license, D.C. Code 1973, § 22–3204, unlawful possession of heroin, *id.*, § 33–402, and unlawful possession of marijuana, *ibid.* He contends (1) that the trial judge erred in refusing to give an instruction on his "innocent possession" of the pistol, and (2) that that error fatally infected the jury's findings on the drug offenses. We conclude that the trial judge properly denied appellant's requested instruction,[1] and affirm the convictions.

## I

Early one morning, Metropolitan Police Officers Henry and Mosely were stopped, in Henry's car, at an intersection in southeast Washington. As they were waiting for the

___

1. We therefore need not reach appellant's second contention.

traffic light to change, they observed appellant crossing the street directly in front of them. As he passed, the officers noticed what appeared to be a pistol tucked into appellant's waistband, with the butt of the pistol outlined beneath his T-shirt. Officer Mosely alighted from the car, identified himself as a policeman (the officers were in plain clothes), and ordered appellant to stop. Appellant did not comply, but rather continued walking away from Mosely. The officer then "went up and grabbed appellant" and pulled a loaded pistol from his waistband. Upon being arrested and searched, appellant was found to have extra ammunition for the pistol, as well as certain substances which later proved to be marijuana and heroin.

At trial, appellant did not contest these facts. Instead, in a somewhat disjointed account, he maintained that his possession of the weapon and ammunition was justified. He testified that on the morning before his arrest he had received a telephone call from his cousin's sister, Carmella Majors, who apparently had expressed concern about the cousin, Lorenzo Majors, with whom she lived. Later that evening, appellant called Carmella back to follow up on Lorenzo's condition. As a result of that call, appellant went to his cousin's house.

When he arrived, he told Lorenzo that he wished to speak to Carmella. Lorenzo informed Carmella that appellant was there, and then, while waiting for her to come downstairs, spoke briefly with appellant. Lorenzo appeared "tired" and "jittery," and seemed upset at the fact that appellant wanted to converse with Carmella instead of him.[2] Appellant replied that he was disturbed with him and that they would

have a chance to talk as soon as appellant met with Carmella. Appellant then left Lorenzo and went down to the basement with Carmella.

Appellant further testified that Carmella was upset about Lorenzo, and that she wanted appellant to take some drugs out of the house.[3] Appellant placed the drugs in a shoulder bag he was carrying. He then saw the pistol and ammunition. He put the ammunition in the bag with the drugs and placed the pistol in his waistband. Appellant stated that he took the weapon because he was afraid Lorenzo would "do something to somebody, or whatever." Appellant further indicated that he intended to take the gun home and store it in a closet until Lorenzo was "in a better frame of mind." He also testified that he planned to throw the drugs away.

Once appellant had collected the items in question, he left the house and headed toward his girlfriend's apartment (where he was living at the time), which was a relatively short distance away. It was en route there, after he had been walking for approximately five minutes, that he was arrested.

## II

At the close of the evidence appellant asserted that he was entitled to an instruction on innocent possession. That is, he sought an instruction to the effect that if he could show an absence of criminal purpose as well as "an affirmative effort to aid and enhance social policy underlying law enforcement or to protect himself or others from harm or to otherwise secure the pistol," then the jury should find him not guilty.[4] The trial court denied this request,

---

2. Appellant described his cousin variously as "tired," "upset," "rest-broken," "jittery," "acting like a child," and "high off something."

3. Neither Carmella nor Lorenzo testified.

4. Appellant's requested instruction was as follows:

The defendant's theory of the case is that although he possessed the pistol at the time in question, he did so innocently and without criminal purpose, but for the benevolent pur-

pose of removing it to a secure place some short distance away, so that it would not be possibly used by his cousin (whom he believed was under the influence of drugs) to harm himself or others in the house.

Thus, the defendant, Mr. Logan, has asserted the defense of innocent or momentary possession of the pistol at the time in question. Such a defense, if believed by you, would absolve him from criminal responsibility in this case, and you should find him not guilty.

and gave standard instructions on the elements of carrying a pistol without a license, general intent, and proof of intent.[5] Appellant urges that the judge erred in failing to give the requested instruction.

In enacting § 22–3204 of the Code, which prohibits the carrying of a pistol without a license, Congress intended to "drastically tighten the ban on carrying dangerous weapons" within the District of Columbia. *See United States v. Walker,* D.C.App., 380 A.2d 1388, 1391 (1977), *quoting Cooke v. United States,* 107 U.S.App. D.C. 223, 225, 275 F.2d 887, 889 (1960). *See also Berkley v. United States,* D.C.App., 370 A.2d 1331, 1333 (1977). Congress' goal was to prevent an individual from carrying an unlicensed pistol on the street because of the danger that such a person would pose to the community "as a result (1) of the inherent dangerousness of the weapon he carried, and (2) of the absence of any evidence of his capability to carry safely such a dangerous instrumentality."[6] *United States v. Walker, supra,* at 1391. To help achieve this end, the statute is phrased in terms of general intent and does not require proof of an intent to use the weapon for an extrinsic unlawful purpose. *Carey v. United States,* D.C.App., 377 A.2d 40, 43 (1977). Correspondingly, judicial recognition of exceptions to the statute has been extremely limited. *Ibid.* One exception which has been recognized is possession for self-defense. *See, e. g., Mitchell v. United States,* D.C.App., 302 A.2d 216, 217–18 (1973); *Wilson v. United States,* 91 U.S. App.D.C. 135, 136, 198 F.2d 299, 300 (1952). Another, that of "innocent possession," has

been discussed generally but is less well-defined.

This court addressed the concept of innocent possession in *Hines v. United States,* D.C.App., 326 A.2d 247 (1974), and did so again in *Carey v. United States, supra.* In both of those cases we noted that the possibility of asserting a defense of innocent possession had been acknowledged in *Mitchell v. United States, supra,* in which we implied that possession of an unlicensed pistol might be excused under some circumstances not involving self-defense.[7] 302 A.2d at 218. *See Carey v. United States, supra,* at 43; *Hines v. United States, supra,* at 248–49. That implication was elaborated upon in *Hines,* in which we stated:

> In order to assert the defense of innocent or momentary possession, an accused must show not only an absence of criminal purpose but also that his possession was excused and justified as stemming from an affirmative effort to aid and enhance social policy underlying law enforcement. [326 A.2d at 248.]

The court then indicated that the requisite intent to advance such a social policy might be demonstrated in a case in which "a pistol was picked up out of an altruistic motive either [1] to protect the finder or others from harm, [2] to turn it over to the police, or [3] to otherwise secure it." 326 A.2d at 248. *See Carey v. United States, supra,* at 43–44. None of those hypothetical facts was present in *Hines,* and we affirmed the denial of the requested instruction.

It is, of course, a composite of the *Hines-Carey* language which formed the basis for

---

> In order to assert the defense of innocent or momentary possession, the defendant must show not only an absence of criminal purpose but also that his possession of the pistol was excused and justified as stemming from an affirmative effort to aid and enhance social policy underlying law enforcement or to protect himself or others from harm or to otherwise secure the pistol.

5. *See* D.C. Bar Ass'n, *Criminal Jury Instructions for the District of Columbia,* Nos. 4.81, 3.01, and 3.02 (3d ed. 1978).

6. This goal has been amplified by the Council of the District of Columbia, which has further restricted possession of firearms. *See* Fire-

arms Control Regulations Act of 1975, D.C. Code 1978 Supp., § 6–1801 *et seq.*

7. In *Mitchell v. United States, supra,* the court stated:

> Holding in hand a gun in anticipation of harm is not possession for purposes of self-defense where the circumstances do not vindicate the action taken. Although appellant asserts that he picked up the gun with the ultimate intention of delivering it to the police, it is significant that he still proceeded to move toward the hostile group and contributed to the ensuing disorder. [302 A.2d at 218.]

appellant's requested instruction. He contends that his testimony demonstrated that he had one of the motives alluded to in *Hines* and *Carey*, namely, that he took the pistol out of the potential reach of Lorenzo Majors in an effort to protect the other members of the Majors household from harm. Therefore, appellant maintains, his possession was innocent and he was entitled to an instruction to that effect.

That analysis is unduly superficial. Although we can conceive of very limited circumstances in which a defendant properly might invoke the defense of innocent possession as contemplated by *Hines* and *Carey*, this is not one of them. In making his argument, appellant has not recognized how narrowly circumscribed an exception to § 22–3204 must be, given the clear intent of Congress. The extent of this circumscription is demonstrated by reference to the self-defense cases.

█ In *Wilson v. United States, supra,* the circuit court held that a trial judge had erred when he declined to instruct the jury that self-defense could be a defense to a charge of carrying a pistol without a license. The court noted that the "exigencies" of that particular occurrence justified the defendant's obtaining and using a weapon in self-defense. 91 U.S.App.D.C. at 136, 198 F.2d at 300. Thus, in the circuit court's view, "the fact that [the defendant] had the pistol in his hand as he fired at his pursuers should not have been the basis of [the instruction given] or a conviction under [§ 22–3204]." *Ibid.* The court went on to state, however, that although the defendant could not be found in violation of § 22–3204 for using the pistol during the time he actually needed it to defend himself, he still could be liable for his possession of the weapon prior to the event. *Ibid.* That is,

the court placed a rigid temporal limit on the justified carrying of an unlicensed pistol, *i. e.,* the exception only exists and applies during the course of the "exigencies of the occasion." *Ibid.* This limit has been applied consistently in the self-defense cases. *See Hurt v. United States,* D.C.App., 337 A.2d 215, 217 (1975); *Cooke v. United States, supra,* 107 U.S.App.D.C. at 224 n.1, 275 F.2d at 888 n.1; *Dandridge v. United States,* 105 U.S.App.D.C. 157, 158, 265 F.2d 349, 350 (1959).

It is true that the cited cases specifically referred to culpable possession existing before the justifying occurrence, but that was simply a function of the facts in those cases. One would be no less culpable under § 22–3204 for carrying a pistol subsequent to the excusing event. It is the contemporaneity of possession and an exigency which allows for consideration of the possibility of asserting a defense to § 22–3204. *Cf. United States v. Lucas,* 142 U.S.App.D.C. 366, 369 n.15, 441 F.2d 1056, 1059 n.15 (1971).

█ Additionally, while such a limitation on an exception to the statute was articulated in the context of self-defense, it is equally applicable to two of the circumstances subsumed under the rubric of "innocent possession" in our decisions. As noted above, the premise for recognizing such an exception is that a defendant's actions did not contravene the statute, but instead were motivated by an intent to "aid and enhance social policy underlying law enforcement." *Hines v. United States, supra,* at 248; *see Carey v. United States, supra,* at 43–44. This intent may be demonstrable, in part, by a defendant's actions when he picks up a pistol (1) to protect himself or others from harm, or (2) to otherwise secure it.[8] *Carey v. United States, supra; Hines v. United States, supra.* In such instances,

---

8. We say "demonstrable, in part" because a defendant's actions alone rarely would suffice to demonstrate innocent intent, just as a declaration of such an intent alone generally would not suffice. Rather, the totality of the circumstances must indicate that the defendant had the requisite intent and was acting consistent therewith. *See Carey v. United States, supra,* 377 A.2d at 44; *Blango v. United States,* D.C. App., 335 A.2d 230 (1975); *Hines v. United States, supra,* 326 A.2d at 248–49; *Cooke v. United States, supra,* 107 U.S.App.D.C. at 224–25, 275 F.2d at 888–89 (self-defense); *Dandridge v. United States, supra,* 105 U.S.App. D.C. at 158, 265 F.2d at 350 (self-defense); *People v. LaPella,* 272 N.Y. 81, 4 N.E.2d 943 (1936). *See generally United States v. Freeman,* 149 U.S.App.D.C. 186, 187, 462 F.2d 290, 291 (1972).

however, a defendant would only be furthering the policy of the statute because an exigent circumstance (*e. g.*, danger to others) dictates that a reasonable course of action is to possess a weapon momentarily. But, as is true with respect to self-defense, the possession could be considered to be innocent only for the duration of the exigency, for the exigency alone would provide the excuse. In order to comport with the dual policies of narrowly circumscribing potential exceptions to the statute and of keeping weapons off the streets, to warrant an instruction a defendant's actions must demonstrate both that he had the intent to turn the weapon over to the police and that he was pursuing such an intent with immediacy and through a reasonable course of conduct.

## III

■ According to appellant's testimony, the exigency of this particular occasion—that which prompted him to act—was Lorenzo's seemingly aberrant behavior combined with the presence of a loaded pistol. This situation purportedly was sufficiently dangerous to lead appellant to believe that the better course of action was to take both the weapon and the extra ammunition. Under the *Hines-Carey* formulation, he asserts, this could be considered a manifestation of an intent to aid the policy underlying law enforcement by attempting to protect others from harm. Assuming, arguendo, that this was appellant's motivation, and that the situation might reasonably be considered to have warranted such a reaction, appellant still would not have been entitled to an instruction on innocent possession. Once he secured the pistol and left the house, the alleged exigency ceased. The justifying moment passed; no one in the Majors household conceivably was imperiled by the weapon.

To the contrary, once appellant struck out on the public way, there was a new

peril, that presented by appellant to the community at large, resulting from the "inherent dangerousness of the weapon he carried, and . . . the absence of any evidence of his capability to carry safely such a dangerous instrumentality." [9] *United States v. Walker, supra,* at 1391. As outlined above, such a contravention of the statute could have justified an instruction only if appellant demonstrably had intended and was in the act of contacting law enforcement authorities, or was taking the weapon directly to them, when he was arrested. *See Carey v. United States, supra,* at 44; *Hines v. United States, supra,* at 249. It is undisputed that appellant had no such intent, for he testified that he was taking the pistol home to store it in a closet until Lorenzo was "in a better frame of mind." His request for an instruction on innocent possession properly was denied. [10]

*Affirmed.*

KERN, Associate Judge, concurring:

Since the "crime of carrying, without a license, a pistol . . . is a serious matter in a troubled metropolitan area," *Epperson v. United States,* 125 U.S.App.D.C. 303, 305, 371 F.2d 956, 958 (1967), and the applicable statute, Section 22–3204, was intended "to forestall the temptation to use [a pistol as a weapon] . . . by forbidding possession of such an object outside the possessor's home or place of business," *Mitchell v. United States,* D.C.App., 302 A.2d 216, 217 (1973), it is not surprising that this court has upheld the trial court's denial of a request for a so-called "innocent possession" instruction in prosecutions for this particular statutory violation upon a variety of fact situations. *See Carey v. United States,* D.C.App., 377 A.2d 40 (1977) (defendant finds pistol in his apartment while in the process of moving from it but waits half-a-day before setting out for police station with it); *Hines v. United States,* D.C. App., 326 A.2d 247 (1974) (defendant finds pistol in alley and carries it nearby to show

---

9. Appellant previously had been convicted of carrying a pistol without a license and armed robbery.

10. Even if appellant had been entitled to assert the defense, his proposed instruction was far too broad. *Compare* appellant's proposed instruction, *supra* note 4, *with Criminal Jury Instructions, supra* note 5, No. 4.815(B).

to his friend); *Mitchell v. United States, supra* (defendant picks up pistol from ground to prevent others from using it, intending ultimately to turn it over to police, and walks into the area of a hostile crowd).

I agree that the trial court in the instant case correctly refused to instruct the jury that appellant "possessed the pistol at the time in question . . . innocently and without criminal purpose, but for the benevolent purpose of removing it to a secure place," given (1) the testimony by appellant that he would return the pistol, unlicensed, to his cousin when the latter was "in a better frame of mind" and (2) our holding in *Mitchell v. United States, supra* at 217, that the purpose for possessing an unlicensed pistol outside the possessor's home or place of business is *irrelevant* in a Section 22–3204 prosecution.

We would be ignoring the legislative intent[1] if we construed the statute in any way so as to encourage citizens to carry an unlicensed pistol on the public streets, no matter how civic-minded they may be or claim to be. Only an emergency situation would justify momentary possession of an unlicensed pistol in public while awaiting police intervention and require a jury instruction on innocent possession.

1. D.C.Code 1973, § 22–3204, is intended "drastically to limit the possession of guns in the District of Columbia." *Berkley v. United States*, D.C.App., 370 A.2d 1331, 1333 (1977).