Larry E. GAULMON, Appellant,

v.

UNITED STATES, Appellee.

No. 81–1042.

District of Columbia Court of Appeals.

Argued March 3, 1983.

Decided Aug. 26, 1983.

---

Daniel Ellenbogen, law student with whom Lois Yankowski, Washington, D.C., was on the briefs, for appellant.

James R. DiFonzo, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Michael W. Farrell, John R. Fisher, Wendy Bebie, and Helen M. Bollwerk, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEBEKER and BELSON, Associate Judges, and YEAGLEY, Associate Judge, Retired.

YEAGLEY, Associate Judge, Retired:

A jury convicted appellant of carrying a pistol without a license, D.C.Code § 22–3204 (1973). On appeal he argues that the trial court erred in (1) denying his motion to suppress the gun as the product of an ille-

gal warrantless search of his hotel room, and (2) denying his post-trial motion for judgment of acquittal on grounds that his residence, a hotel room, fit within the "dwelling house" exception to the offense.[1] We affirm.

On October 15, 1980, appellant registered at the Chastelton Hotel, located at 1701 16th Street, N.W., and checked into room 530. Two days later, as appellant entered the hotel's fifth floor elevator early in the afternoon, he asked one of the maids, who was exiting the elevator, to "go in" to his room and "leave some towels and sheets." Using her master key, the maid entered his room and, in the course of her work, discovered a handgun lying on top of the bedroom dresser. She notified the assistant manager, who called the police. When two Metropolitan Police Department officers arrived at the hotel, the hotel manager opened the room with a master key. The officers wrapped the gun in a towel and took the weapon to the station, where it was found to be unloaded.

The police had neither a search warrant for the room nor an arrest warrant for the occupant at the time of the seizure. At the suppression hearing one of the officers testified that the manager and assistant manager "were going to provide that information when they got it together later." On October 21, Detective Peter Banks examined the hotel registration records and ascertained appellant's identity. The detective also discovered that appellant had checked into the hotel on October 15, had registered and paid in advance for a one-week stay, and had proffered as identification a driver's license indicating a Memphis, Tennessee address. After determining that appellant was not licensed to carry a pistol in the District of Columbia, Banks obtained an arrest warrant, which was executed on the following day.

The trial court denied appellant's motion to suppress the gun. The court did not address the validity of the hotel manager's consent to the search, *see Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (hotel clerk cannot consent to warrantless search of guest's hotel room), notwithstanding the fact that here, the police were not the instigators of the search (as in *Stoner*) but were asked to come to the hotel by the assistant manager. Rather, the court found that exigent circumstances justified the warrantless entry and seizure of the weapon, stating in part that, "In view of the inherent danger that a loaded handgun poses to the safety of the District of Columbia community, it was reasonable and proper for the police to enter the defendant's room, peacefully and during daytime hours, and seize the weapon." Appellant appeals from the judgment of the trial court.

I

A search warrant is not required where exigent circumstances[2] evince "a need that could not brook the delay incident to obtaining a warrant." *Brooks v. United States,* 367 A.2d 1297, 1301 (D.C.1976) (*quoting Dorman v. United States,* 140 U.S. App.D.C. 313, 320, 435 F.2d 385, 392 (1970). In *Dorman,* the court said, "the Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." *Id.* (*quoting Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967)). As set forth by the *Dorman* court, the relevant factors in determining whether exigent circumstances exist are these:

(1) that a grave offense is involved, particularly a crime of violence; (2) the suspect is reasonably believed to be arm-

1. "No person shall within the District of Columbia carry either openly or concealed on or about his person, except in his dwelling house ... a pistol, without a license...." D.C.Code § 22–3204 (1973).

2. *Warden v. Hayden,* 387 U.S. 294, 298, 87 S.Ct. 1642, 1645, 18 L.Ed.2d 782 (1967); *see Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2026–27, 29 L.Ed.2d 564 (1971); *United States v. Hendrix,* 194 U.S.App. D.C. 76, 78, 595 F.2d 883, 885 (1979).

ed; (3) a clear showing of probable cause; (4) a strong reason to believe that the suspect is in the dwelling; (5) the likelihood of escape if not swiftly apprehended; (6) a peaceful entry as opposed to "breaking"; and (7) the time of entry (night or day).

*United States v. Lindsay,* 165 U.S.App.D.C. 105, 110, 506 F.2d 166, 171 (1974) (summarizing *Dorman* factors).

■ Not all the indicia of exigency need be present to justify a warrantless search. *United States v. McEachin,* 216 U.S.App. D.C. 320, 325 n. 7, 670 F.2d 1139, 1144 n. 7 (1981). In *McEachin,* the defendant argued that the police did not have a "clear show-. ing" of probable cause under the *Dorman* formulation sufficient to justify a warrantless entry and search of his apartment. Noting that "this is but one of several factors relevant in determining whether exigent circumstances exist," *id.,* the circuit court upheld the search. Other courts have demonstrated similar flexibility in analyzing the facts of exigency. *See State v. Page,* 277 N.W.2d 112, 118 (N.D.1979) (*Dorman* guidelines "not to be interpreted as cardinal maxims, rigidly applied to every case"); *see generally, United States v. Flickinger,* 573 F.2d 1349, 1354 (9th Cir.) ("exigency does not evolve from one single fact" but rather the "totality of the circumstances"), *cert. denied,* 439 U.S. 836, 99 S.Ct. 119, 58 L.Ed.2d 132 (1978); *State v. Lloyd,* 61 Hawaii 505, 511, 606 P.2d 913, 918 (S.Ct. 1980) (exigent circumstances measured by totality of circumstances); *Commonwealth v. Forde,* 367 Mass. 798, 801, 329 N.E.2d 717, 720 (1975) (same); J. HALL, SEARCH AND SEIZURE § 7:7 at 211 (1982) (flexible interpretation of *Dorman* guidelines "easier to apply on the street and in the courtroom"). As the D.C. Circuit aptly noted, "[T]he very term 'exigency' commands that analysis be shaped by the realities of the situation presented by the record." *United States v. Robinson,* 174 U.S.App.D.C. 351, 354, 533 F.2d 578, 581 (en banc), *cert. denied,* 424 U.S. 956, 96 S.Ct. 1432, 47 L.Ed.2d 362 (1976).

The trial court ruled that application of the *Dorman* factors rendered the search of appellant's hotel room reasonable. The court did not apply or weigh each factor but instead found the circumstances indistinguishable from facts held to support a warrantless entry in *United States v. McKinney,* 155 U.S.App.D.C. 299, 477 F.2d 1184 (1973). In *McKinney,* a hotel manager discovered that the telephone in the defendant's room was off the hook and sent a bellhop to the room to replace the receiver. Entering the room with a pass key, the bellhop spotted a sawed-off shotgun lying on a night table and notified the manager, who called the police. Arriving at the hotel an hour later, the police entered the room, examined the gun and removed from it a live shell, then put the weapon back on the table. The defendant returned to the room a short time later and was arrested. Upholding the warrantless entry and search of the room, the circuit court applied the *Dorman* factors as follows:

The case at bar did not involve a "complacent" crime but rather a grave offense, which, if not a crime of violence strictly speaking, obviously posed a danger to the community. There was strong probable cause to believe that a crime had been committed by the occupant of the room ... even though there was a possibility that a justification for possession of such a weapon might be established. The entry by the police detectives was peaceful and during the day, and had been preceded by entries by the hotel staff. While a hotel room is entitled to privacy, the police were entitled to take into account that what was involved was a nonresident of the District of Columbia who had recently checked into a transient hotel, and again, that this was a sawed-off shotgun, an ominous threat in and of itself.... Under these circumstances we find the entry and seizure valid.

*Id.* at 301, 477 F.2d at 1186. Relying on *McKinney,* the trial court found that "a loaded revolver in plain view in a hotel room, created a similar exigent circumstance, justifying the entry and seizure."

Appellant preliminarily contends that the trial court erred in finding that the gun was loaded. The record establishes and the government concedes that the gun was not loaded at the time of the seizure. Accordingly, our review of the trial court's ruling proceeds with the correct fact in mind. *Randall v. United States,* 353 A.2d 12, 13 (D.C.1976). Nevertheless, we note that the officer did not know and could not have known that the gun was unloaded until after he seized it, and that the exigent circumstances doctrine "is to be applied to the facts as perceived by the police at the time of entry, not as subsequently uncovered." *Brooks v. United States, supra,* 367 A.2d at 1302. Thus, for purposes of assessing the demands of exigency, whether or not the gun was loaded is a *post hoc* determination legally irrelevant to what the officer knew or could reasonably surmise at the time of the warrantless entry and search. Also ammunition might have been concealed and available to Gaulmon elsewhere in the room.

■ Turning to the facts as known by the officers at the time of entry, we find *McKinney* persuasive. The facts of *McKinney* are largely indistinguishable. As in *McKinney,* the place of entry was a hotel room, indicating not only that its occupant in all likelihood was not a resident of the District of Columbia,[3] but more importantly, that the gun had been carried on the streets of the city by the occupant, and would be carried in the District when the occupant left. As Congress recognized, an individual who carries an unlicensed pistol on the street poses a serious threat to the community because of the "inherent dangerousness" of the weapon and "the ab-

sence of any evidence of his capability to carry safely such a dangerous instrumentality." *Logan v. United States,* 402 A.2d 822, 825 (D.C.1979) (*quoting United States v. Walker,* 380 A.2d 1388, 1391 (D.C.1977)). The past and inexorably imminent presence of an unlicensed handgun on the streets of the District of Columbia is assuredly an exigency the police may reasonably consider in determining whether to proceed without a warrant. *See United States v. McKinney, supra,* 155 U.S.App.D.C. at 301, 477 F.2d at 1186.

■ Appellant, however, argues that *McKinney* is inapposite because the weapon involved there, a shotgun, is more dangerous than a handgun. We disagree. While it is true that possession of a sawed-off shotgun is impermissible for any purpose, 18 U.S.C. § 922 (1976), and a handgun may be owned by a private citizen under certain circumstances, D.C.Code §§ 22–3204, –3210 (1973),[4] both weapons are dangerous to the community. "[A] pistol or other deadly or dangerous weapon capable of being concealed is a serious matter in a troubled metropolitan area." *Epperson v. United States,* 125 U.S.App.D.C. 303, 305, 371 F.2d 956, 958 (1967). More recently, in *Billinger v. United States,* 425 A.2d 1304, 1305 (D.C. 1981), we recognized that "menacing statistics" reflect "substantial injury and loss of life attributable to the unlawful use of firearms in the District of Columbia."[5] The presence of a deadly weapon—whether pistol or shotgun—poses a threat of harm to both police and public, and is thus a very significant factor in evaluating whether exigent circumstances exist. *See Brooks v. United States, supra,* 367 A.2d at 1302 (reasonable belief that defendant was armed

---

3. The reasonableness of this assumption negates the fact that at the time of entry the police had no other information relating either to when appellant had checked into the hotel or to the duration of his occupancy. *Cf. McKinney v. United States, supra,* 155 U.S.App.D.C. at 301, 477 F.2d at 1186.

4. In particular, D.C.Code § 22–3206 (1973) provides that a person may obtain a license to carry a pistol "if it appears that the applicant

has good reason to fear injury to his person or property." *See generally McBride v. United States,* 441 A.2d 644, 649 n. 9 (D.C.1982).

5. At the time of appellant's arrest, handguns accounted for nearly one-third of the weapons used in over 10,000 violent crimes committed the previous year in the District of Columbia. STATISTICAL ANALYSIS CENTER, CRIME AND ARREST PROFILE: THE NATION'S CAPITAL, 32, 113 (1980).

indicates presence of threat to community security); *United States v. McEachin, supra,* 216 U.S.App.D.C. at 325, 670 F.2d at 1144 (exigency heightened by likelihood of imminent removal of a deadly weapon by robbery suspect); *United States v. Allison,* 205 U.S.App.D.C. 270, 272, 639 F.2d 792, 794 (1980) (presence of a gun "made the situation more pressing and the emergency more critical"); *United States v. Hendrix, supra,* 194 U.S.App.D.C. at 79, 595 F.2d at 886 ("threat to human life" presented by existence of gun on premises); *In re F.D.P.,* 352 A.2d 378, 383 (D.C.1976) (warrantless search for gun in defendant's back yard upheld because of "possibility of harm to the public at large").

■ Furthermore, as in *McKinney* the police peaceably entered the hotel room during the day, after the management had inadvertently discovered and informed them of the presence of a dangerous weapon. Although a showing that a crime had been committed was not as strong as in *McKinney* because a handgun may under narrow circumstances be lawfully possessed, *supra* note 4, and a shotgun may not, in a transient hotel located in a high crime area, the likelihood, if not near certainty, of unlawful possession cannot be discounted. In any event, the absence of a "clear showing" of probable cause is not dispositive. *United States v. McEachin, supra,* 216 U.S.App.D.C. at 325, 670 F.2d at 1144. Nor is it necessary that the other *Dorman* factors, such as reason to believe the suspect is in the dwelling or a likelihood that he will escape, be present. *See State v. Page, supra,* 277 N.W.2d at 118; *see generally United States v. Flickinger, supra,* 573 F.2d at 1354; *State v. Lloyd, supra,* 606 P.2d at 918. Rather, our analysis is guided by "the realities of the situation presented by th[is] record." *United States v. Robinson, supra,* 174 U.S.App.D.C. at 354, 533 F.2d at 581.

■ Appellant nevertheless contends that the police could have prevented the exigency by posting a guard at his hotel room door while a warrant was obtained. *See Brooks v. United States, supra,* 367

A.2d at 1303. We disagree. The presence of a dangerous weapon is a circumstance of far greater significance than other situations where posting a sentry may be required, e.g., preventing destruction of evidence. *United States v. Rosselli,* 506 F.2d 627, 630–31 (7th Cir.1974) (placing defendant's apartment under surveillance appropriate to preserve evidence but not where emergency involves danger to lives of officers or others); *United States v. Minick,* 455 A.2d 874 n. 9 (D.C.1983) (Kelly, J., dissenting) (presence of weapon "presents dangers beyond the risk of flight and destruction of evidence"). Where a gun is present, guarding a residence while a warrant is obtained "may carry . . . unacceptable dangers, i.e., a heightened risk of weapons play and danger to third parties." *United States v. Flickinger, supra,* 573 F.2d at 1356. *Cf. United States v. Costa,* 356 F.Supp. 606, 611–12 (D.D.C.) (warrantless entry into hotel room to seize narcotics held illegal where no immediate danger to community or police), *aff'd,* 156 U.S.App.D.C. 200, 479 F.2d 921 (1973). If, for example, appellant or a friend had returned before one of the officers had obtained the warrant, it is far from clear that the remaining officer, without further information affording probable cause to arrest, could legally have prevented him from entering the room to secure and perhaps to use the gun. The police should not be forced to risk such an encounter where reasonableness determines the Fourth Amendment's requirements. *See generally* Note, *Arrests on Third Party Premises: Reasonableness Under the Fourth Amendment,* 18 AM.CRIM.L.REV. 449, 450 n. 8 (1981). As the D.C. Circuit noted in a situation where the police also knew that a gun was in the defendant's room:

[I]f [the defendant] returned while they had the room staked out the police could not know for certain the nature or extent of his criminal violations, if any, and thus could not predict his reaction to their appearance. A gun fight might have developed. The police acted reason-

ably to reduce this possibility by peaceably entering the room . . . .

*United States v. Allison, supra,* 205 U.S. App.D.C. at 272, 639 F.2d at 794. Under the circumstances here, as in *McKinney,* the exigencies were sufficient to justify a warrantless entry into appellant's hotel room to seize a gun that would otherwise pose a substantial threat to the community. *McKinney v. United States, supra,* 155 U.S. App.D.C. at 301, 477 F.2d at 1186.

## II

In a post-trial motion for judgment of acquittal appellant argued that his accommodations at the Chastelton Hotel fit within the "dwelling house" exception to the offense of carrying a pistol without a license. *See supra* note 1. The trial court rejected this contention, ruling that appellant "lacked exclusive possession and control of his suite of rooms" to come within the statutory exception. We agree.

■ Congress being mindful that a person who carries an unlicensed pistol on the streets of the District of Columbia poses a danger to the community, *United States v. Walker, supra,* 380 A.2d at 1391, enacted § 22–3204 in order to "drastically tighten the ban on carrying dangerous weapons" within the District of Columbia. *Id., (quoting Cooke v. United States,* 107 U.S.App. D.C. 223, 225, 275 F.2d 887, 889 (1960)); *see Logan v. United States, supra,* 402 A.2d at 825. At the same time, Congress sought to preserve "the traditional right of citizens to have arms in their homes and on other land belonging to them," *Billinger v. United States, supra,* 425 A.2d at 1305 (D.C.1981), and therefore, provided certain exceptions to the general prohibition. Our decisions have struck a balance between these two goals by requiring a defendant who seeks to come within the exemption to establish "*exclusive* possession and control" of the premises. *Hines v. United States,* 326 A.2d 247, 249 (D.C.1974); *White v. United States,* 283 A.2d 21, 24 (D.C.1971).

■ The evidence at trial indicated that appellant checked into the hotel for a one-week period on October 15, 1980, and the majority of guests remain for less than two weeks. The manager and head housekeeper retained keys to all the rooms and routinely supplied linen and cleaning service to the occupants. The hotel required guests to present proper identification at the time of registration and provided the use of outside telephone call service only through the hotel switchboard, which kept a record of calls for billing. We are satisfied that, as a matter of law, the day-to-day control exercised by hotel management over premises at which guests intend to remain for relatively short periods of time establishes that any possessory interest appellant may have had in his hotel room was not "exclusive." *White v. United States, supra,* 283 A.2d at 24; *Hines v. United States, supra,* 326 A.2d at 249; *see Beall v. Everson,* 34 A.2d 41 (D.C.1943) (a "roomer" does not have "exclusive legal possession").

Accordingly, the judgment on appeal is hereby

*Affirmed.*