**Frankie Joe ALLEN, Petitioner,**

v.

**DISTRICT OF COLUMBIA HACKERS'
LICENSE APPEAL BOARD,
Respondent.**

No. 83–357.

District of Columbia Court of Appeals.

Submitted Oct. 26, 1983.

Decided Jan. 17, 1984.

Melvin A. Marshall, Washington, D.C., was on the brief for petitioner.

Judith W. Rogers, Corporation Counsel, Washington, D.C., at the time the brief was filed, Charles L. Reischel, Deputy Corp. Counsel, and Leo N. Gorman, Asst. Corp. Counsel, Washington, D.C., were on the brief for respondent.

Before KERN, MACK and TERRY, Associate Judges.

TERRY, Associate Judge:

Respondent, the District of Columbia Hackers' License Appeal Board, upheld the denial by the Department of Transportation of petitioner's application for a hacker's license on the ground that he was on parole for a manslaughter conviction at the time of his application. We find petitioner's challenges to the Board's decision to be entirely without merit, and accordingly we affirm it.

I

In 1972 the United States District Court for the District of Columbia sentenced petitioner to four to twelve years in prison upon his conviction of manslaughter. He was released on supervised parole in April 1976. In June 1978 the District of Columbia Board of Parole placed him on unsupervised parole, in accordance with 9 DCRR § 201 (1981).

In August 1982 petitioner applied to the District of Columbia Department of Transportation for a hacker's license. Because he was still on parole, albeit unsupervised, the Department's Public Vehicle Branch denied his application pursuant to 15 DCMR §§ 601.12 and 601.13 (1983). Petitioner appealed to the Hackers' License Appeal Board, which, after a hearing, affirmed that denial.

This court has jurisdiction to hear this petition for review of the Board's ruling because it arises from a "contested case" as that term is defined in the District of Columbia Administrative Procedure Act (DCAPA), D.C.Code § 1–1502(8) (1981). See D.C.Code § 1–1510(a) (1981); *Debruhl v. District of Columbia Hackers' License Appeal Board,* 384 A.2d 421 (D.C.1978) (holding that jurisdiction exists under DCAPA to hear petition for review of denial of license application on grounds similar to those asserted here). No question of fact is presented; only the Board's interpretation of the term "parole" and its constitutional implications are at issue.

Petitioner disputes the finding that he was ineligible for a hacker's license under the applicable regulations. He contends that, under the District of Columbia parole law, unsupervised parole is not "parole" within the meaning of those regulations. Alternatively, he contends that if it is, then the District's parole law is *ex post facto* as

applied to him. He also claims that, having issued a chauffeur's license to another ex-convict on supervised parole, respondent violated his right to the equal protection of the laws. We reject all three arguments.

## II

Limitations on the eligibility of parolees for hacker's licenses are found in 15 DCMR §§ 601.12 and 601.13 (1983):

> 601.12. The Director [of the Public Vehicle Branch] shall not issue any license under this chapter to any person who, in the judgment of the Director, is not of good moral character, under the standards laid down in §§ 601.13 through 601.15.

> 601.13. An applicant shall not be considered of good moral character if he or she is any of the following:

> \* \* \* \* \* \*

> (c) On parole or probation at the time of the filing of his or her application for a license, except as provided in § 601.14.

Section 601.14 creates an exception for parolees convicted of minor crimes.

█ Surely, as petitioner argues, termination of supervision reflects a finding that the parolee's rehabilitation is substantially complete. In its report on the bill enacting what is now D.C.Code § 24–204(b) (1981), the House Committee on the District of Columbia stated that the bill was intended to authorize discharge from supervision when the District Board of Parole "deems that the purpose for which the parole was granted has been accomplished." H.R.REP. No. 16, 89th Cong., 1st Sess. 1, U.S.Code Cong. & Admin.News 1965, p. 117 (1965). This court recognized that intent in *Williams v. United States,* 421 A.2d 19 (D.C. 1980). In holding that a reduction of a prisoner's sentence so as to make him eligible for parole was not tantamount to a

"certificate of rehabilitation" under D.C. Code § 14–305(b)(2)(A)(ii) (1981), which would have insulated him from impeachment with the conviction on which that sentence was based, we observed that in section 24–204(b) Congress had "equated rehabilitation with discharge from parole supervision...." *Id.* at 24.

█ However, it is clear from both the legislative history of section 24–204(b) and from the regulations promulgated under it[1] that termination of supervision is not termination of parole. In its report on the bill containing section 24–204(b), the Senate Committee on the District of Columbia assured the Senate that "if such a person discharged from supervision is found to be engaging in misconduct, he could be restored to supervision, and any person committing a new offense could be returned as [a] violator, if his full term of parole [has] not expired." S.REP. No. 179, 89th Cong., 1st Sess. 2 (1965). The regulations forcefully confirm this view:

> (c) The order of release from supervision in no way releases the parolee from the custody of the Attorney General or the jurisdiction of the Board [of Parole] before the maximum date of the term or terms imposed....

> (d) If, after an order of release from supervision has been issued by the Board, but prior to the expiration of the sentence(s) imposed ..., the parolee commits any new criminal offense or engages in any conduct which might bring discredit to the parole system, the Board may, in its discretion, issue a warrant for the parolee's return to custody as a violator, rescind the order of release from supervision and return the parolee to active supervision, or impose any special conditions to the order of release from supervision.

---

1. D.C.Code § 24–204(b) (1981) states that "the Council of the District of Columbia may promulgate rules and regulations under which the Board of Parole, in its discretion, may discharge a parolee from supervision prior to the expiration of the maximum term or terms for which he was sentenced." The Council has acted accordingly. *See* 9 DCRR §§ 201.1–201.4 (1981).

9 DCRR § 201.4(c)–(d) (1981). Thus, while a parolee such as petitioner is freed from the duty of reporting, that freedom is only conditional; he remains subject to the same sanctions as those who are still supervised. He is not a fully free man. Under District law, then, petitioner was still on parole for his manslaughter conviction when he applied for a hacker's license, and thus he fell within the class of applicants whom sections 601.12 and 601.13 of the hacker's license regulations exclude from eligibility for a license.[2]

### III

Petitioner argues next that federal, not District of Columbia, parole law should apply to him. He claims that at the time of his conviction in the United States District Court, he was subject to federal parole law, and under that law the termination of his supervised parole would have been the end of his parole altogether. But as a result of the District's court reorganization of more than a decade ago,[3] he states, jurisdiction over him shifted to the District's Board of Parole. As we have seen, under District law the end of supervision is not also the end of parole. Thus, he argues, the shift of jurisdiction over him increased the severity of his punishment after that punishment was imposed, so that it amounts to a constitutionally prohibited *ex post facto* law.

■ Even if petitioner had been subject to federal parole law at the time of his conviction in 1972, and thereafter court reorganization had suddenly subjected him to District law instead, his argument would

fail. The pre-1976 federal law authorizing unsupervised parole, 18 U.S.C. § 4208(d) (1970), *repealed by* Pub.L. No. 94–233, § 2, 90 Stat. 219 (1976),[4] applied only "to persons . . . convicted of offenses under any law of the United States not applicable exclusively to the District of Columbia." Pub.L. No. 85–752, § 6, 72 Stat. 847 (1958). Of course, the manslaughter statute under which petitioner was convicted, D.C.Code § 22–2405 (1967),[5] was "applicable exclusively to the District of Columbia." Thus, had federal parole law applied to petitioner, he would not have been eligible at all for unsupervised parole; a shift to District law would have been a windfall for him.

As it was, of course, the District's court reorganization had nothing to do with the question of which parole law applied; indeed, to some extent that question remains open. *See* D.C.Code § 24–209 (1981); *Cosgrove v. Smith,* 225 U.S.App.D.C. 235, 697 F.2d 1125 (1983). Petitioner, however, having been convicted of a violation of the District of Columbia Code and sent to the District of Columbia Reformatory at Lorton, Virginia, was surely subject to District parole law. Only after he was transferred to the federal penitentiary at Lewisburg, Pennsylvania, would the applicable law have been in doubt. Yet, even then, his stay at Lewisburg ended in January 1975, before the repeal of the old federal parole law in 1976. Thus his transfer back to Lorton more than a year before being released on parole was a benefit, not a deprivation of any right. Petitioner was no worse off when he was paroled than he was at the time of his conviction; he therefore

---

2. Respondent contends that this court should defer to its interpretation of the term "parole" because it is a part of the regulations which respondent interprets regularly. *See, e.g., Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). We disagree. The meaning of "parole" is more properly determined under District parole regulations, the interpretation of which is not the Hackers' Board's stock in trade.

3. District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L. No. 91–358, 84 Stat. 473 (1970). Because court reorganiza-

tion took effect in several stages, the indictment which resulted in petitioner's manslaughter conviction was filed in the United States District Court, not the Superior Court. *See* D.C.Code § 11–502(2)(A)(v) (1981).

4. Federal laws governing parole were extensively revised in 1976. Prior statutes were all repealed, and new provisions were enacted to supersede them. Pub.L. No. 94–233, *supra.*

5. The manslaughter statute remains unchanged in the current code. D.C.Code § 22–2405 (1981).

cannot complain of any *ex post facto* oppression.

## IV

■ Finally, petitioner brings to our attention another case, *In re Nance* (D.C. Hackers' License Appeal Board, December 17, 1981), in which respondent granted a chauffeur's license to an applicant who had been convicted twenty years earlier of armed robbery and was then on supervised parole. The grant of the license contravened 15 DCMR § 608.1 (1983), which makes parolees who are ineligible for a hacker's permit also ineligible for a chauffeur's permit. Citing the disparity between *Nance* and his own case, petitioner contends that he has been denied the equal protection of the laws. Respondent acknowledges that the *Nance* decision was in error, but contends that it has no bearing on the validity of its decision here.

We agree with respondent. If *Nance* was wrongly decided, as apparently it was, it would be far less rational to follow its precedent than to distinguish the present case from it, as the Board has done. Even if *Nance* were correct, the Board's decision here articulated rational reasons for distinguishing the two cases, particularly the fact that chauffeurs are hired under circumstances which make the customer far less vulnerable to abuse by the licensee. It would not be prudent to reverse the Board here for being more sensible than it was in *Nance*.

The same reasoning applies to petitioner's claim that the denial of his application violated his Fifth Amendment [6] right to equal protection. Here the comparison to *Nance* does not even get him to first base. In the absence of a suspect classification or the denial of a fundamental right, petitioner must show that the disparate treatment of him and Nance was irrational. This he has not done. There was, as we have said, at least one significant reason for the disparity: the different circumstances surrounding the hiring of a chauffeur and a taxi.

6. *See Bolling v. Sharpe,* 347 U.S. 497 (1954).

The Constitution does not guarantee that differently situated persons will all be treated in the same way. We therefore reject petitioner's equal protection claim.

*Affirmed.*

District of Columbia Court of Appeals.