**Henry A. YIRENKYI, Petitioner,**

v.

**DISTRICT OF COLUMBIA HACKERS' LICENSE APPEAL BOARD, Respondent.**

**No. 85–1082.**

District of Columbia Court of Appeals.

Submitted Dec. 2, 1986.
Decided Jan. 28, 1987.

---

Henry A. Yirenkyi filed a brief pro se.

Michele Giuliani, Asst. Corp. Counsel, with whom John H. Suda, Acting Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for respondent.

Before NEBEKER, TERRY, and STEADMAN, Associate Judges.

TERRY, Associate Judge:

The Public Vehicle Branch of the District of Columbia Department of Transportation denied petitioner's application for renewal of his taxicab driver's license on the ground that he lacked good moral character, in that he was on probation after his second conviction of carrying a pistol without a license[1] at the time he filed his application. The Hackers' License Appeal Board, after

1. D.C.Code § 22–3204 (1981).

a hearing, affirmed that denial and ordered petitioner to surrender his hacker's identification card to the Public Vehicle Branch. We affirm the Board's decision.

## I

Henry Yirenkyi has been a taxicab driver in the District of Columbia for approximately ten years. In April 1983, and again in July 1984, he was convicted of carrying a pistol without a license in his taxicab. After his first conviction, Mr. Yirenkyi was placed on probation for one year. Upon being convicted a second time, he was fined $1000 and sentenced to serve one year in jail. Execution of the jail sentence was suspended, however, and he was placed on probation for eighteen months.

The Public Vehicle Branch, considering the seriousness of these two convictions, the fact that Mr. Yirenkyi committed the very same offense twice in little more than a year, and the need to protect the public, denied his application for renewal of his hacker's license. In its letter of denial the Branch cited applicable regulations, 15 DCMR §§ 1001.12 through 1001.15 (1986), which limit the eligibility of license applicants. Those regulations provide in pertinent part:

1001.12. The Director shall not issue any license under this chapter to any person who, in the judgment of the Director, is not of good moral character,[2] under the standards laid down in §§ 1001.13 through 1001.15.

1001.13. An applicant shall not be considered of good moral character if he or she is any of the following:

\* \* \* \* \* \*

(c) On parole or probation at the time of the filing of his or her application for

a license, except as provided in § 1001.-14.

1001.14. Notwithstanding the provisions of § 1001.13, if the parole or probation arose out of a conviction for a crime other than those listed in § 1001.15,[3] the parolee's or probationer's application may be considered for approval by the Director if a letter from the appropriate parole or probation officer is submitted with the application stating that there is no objection to the issuance of a hacker's license.

Mr. Yirenkyi appealed from this decision to the Hackers' License Appeal Board, which unanimously affirmed the ruling of the Public Vehicle Branch. The Board concluded that the seriousness and frequency of the offenses of which he had been convicted, "coupled with the mission of the Branch, which is primarily to protect the public, who frequently ride in Appellant's taxicab," constituted "sufficient cause" to deny the renewal of his license. The Board's order also required him to turn in his hacker's identification card. He petitioned the Board for reconsideration, which was denied for lack of new evidence. He then filed the instant petition for review, of which this court has jurisdiction under D.C. Code § 1–1510(a) (1981).[4]

## II

15 DCMR § 1001.13(c) prohibits any person who is on parole or probation from obtaining a license to drive a taxicab in the District of Columbia. The only exception to that prohibition is found in 15 DCMR § 1001.14, which permits a probationer who has been convicted of a crime other than

2. The general licensing statute provides that no person may be licensed to operate a vehicle for hire unless he or she "is a person of good moral character and is qualified to operate such vehicle...." D.C.Code § 47–2829(e) (1981).

3. Section 1001.15 provides that "[a]n applicant shall not be considered of good moral character if he or she has been convicted of ... or is currently under an indictment for" any of a

number of serious crimes, including murder, kidnapping, robbery, any sex offense, and any narcotic offense.

4. See Allen v. District of Columbia Hackers' License Appeal Board, 471 A.2d 271, 272 (D.C. 1984); Debruhl v. District of Columbia Hackers' License Appeal Board, 384 A.2d 421 (D.C.1978).

one of those listed in 15 DCMR § 1001.15[5] to submit a letter from his or her probation officer "stating that there is no objection to the issuance of a hacker's license." Although petitioner did submit a letter from his probation officer, the letter merely recited the facts surrounding the two convictions, reiterated petitioner's arguments for renewal of his license, and stated that his "overall adjustment [had] been positive concerning reporting to this office when requested." Even though the Public Vehicle Branch construed this letter as "favorable," it did not meet the requirements of section 1001.14 because the probation officer failed to state that he had no objection to the issuance of a license. In any event, the mere fact that petitioner submitted a letter from his probation officer did not mean that the Director of the Branch was obliged to issue him a license. The regulation states that a probationer's application "may be considered for approval" if a letter is submitted, but it does not require approval. The final decision on petitioner's application remained at all times within the sound discretion of the Public Vehicle Branch, which was free to deny it despite the probation officer's letter, subject to appellate review by the Hackers' License Appeal Board and, ultimately, this court. Thus the only issue for us to decide in this case is whether the Public Vehicle Branch and the Hackers' License Appeal Board abused their discretion in refusing to renew petitioner's license to drive a taxicab.

 The regulations at issue here implement the governing statute, D.C.Code § 47–2829(e) (1981), which limits the issuance of hackers' licenses to persons of "good moral character." Whatever that term may mean in other contexts,[6] it surely excludes from consideration for a license any person, such as petitioner, who has been twice convicted of an offense against the public safety. Another applicable regulation, 15 DCMR § 822.6 (1986), provides in pertinent part:

> The operation of taxicabs shall be conducted in accordance with the laws of the District and with due regard for the safety, comfort and convenience of passengers ... and for the safety of the general public. All reasonable efforts shall be made to promote safety at all times and under all conditions.

The Board in this case concluded that carrying a pistol without a license is a serious offense because of the danger it poses to the public. *See, e.g., Logan v. United States*, 402 A.2d 822, 825 (D.C. 1979); *United States v. Walker*, 380 A.2d 1388, 1390–1391 (D.C.1977). That conclusion is bolstered by the fact that both of petitioner's convictions of that offense were based on his possession of a pistol *in his taxicab.*

> Hackers pursue their employment without close supervision and maintain direct and personal contact with the general public, which must necessarily rely upon the District's certification of fitness. It is not unreasonable ... to view certain types of prior convictions of relatively recent occurrence as establishing a lack of moral integrity.

*Debruhl v. District of Columbia Hackers' License Appeal Board, supra* note 4, 384 A.2d at 426.[7] We hold that the Board quite properly took into account the nature of petitioner's two prior convictions.

The fact that petitioner was convicted twice of the same offense in a short period of time was also a matter of concern to the Board. "Evidence of past disregard for

---

5. Carrying a pistol without a license is not one of the offenses listed in section 1001.15.

6. We need not decide in this case whether "good moral character" has a sufficiently precise meaning, independent of the limiting regulations, to withstand a vagueness challenge.

7. Because taxicab drivers are common carriers, *Stewart v. District of Columbia*, 35 A.2d 247, 248 (D.C.1943), the highest duty of care is imposed upon them for the protection and safety of their passengers. *Butler v. McCalip*, 54 A.2d 644, 646 (D.C.1947); *Bell Cab Co. v. Coppridge*, 81 U.S. App.D.C. 337, 338, 158 F.2d 540, 541 (1946).

the law is not conclusive as to the applicant's future compliance, but it raises a reasonable inference, which an applicant must overcome, that the applicant is likely to continue such misbehavior." *Boston Carrier, Inc. v. ICC,* 241 U.S.App.D.C. 238, 241, 746 F.2d 1555, 1558 (1984) (footnote omitted). Petitioner failed to overcome that inference. When the Chairman of the Board commented that he had "made two mistakes" by getting arrested twice for the same offense, petitioner replied, "Next time I'll make sure that I do it right." In response to a question from a Board member about what he intended to do "next time," petitioner said, "If I am harassed and I am forced to get a gun again, I will make sure that I explore the necessary avenues.... If I have to." These remarks suggest, at a minimum, that petitioner lacks a full appreciation of the wrongfulness of his past conduct and that the safety of his passengers and of the public is not a matter of serious concern to him.

■ Petitioner asserts that he possessed both guns with no wrongful intent, but only for protection because he had twice been robbed. Proof of intent to use the gun for an unlawful purpose, however, is not an element of the crime of carrying a pistol without a license. All that is required is a general intent to carry the pistol, not an intent to carry it without a license. *McMillen v. United States,* 407 A.2d 603, 605 (D.C.1979); *see Brown v. United States,* 379 A.2d 708, 710 n. 3 (D.C. 1977) ("the proscribed act is that of generally intending to carry a pistol coupled with the fact that such pistol is carried unlicensed in the District of Columbia"); *Mitchell v. United States,* 302 A.2d 216, 217 (D.C.1973). What petitioner's purpose may have been is essentially irrelevant.

■ Petitioner further alleges that when he purchased the first pistol, he "overlooked" and "misinterpreted" the registration papers, mistakenly believing that the gun salesman had registered his pistol at the time of purchase when the salesman checked his record with the police. What actually happened was that the salesman followed normal procedure by running his application through the police department to see if he had a prior criminal record. At the hearing before the Board petitioner testified that he thought the application form, which the salesman admonished him to keep with him at all times, was his gun permit. These assertions are all beside the point because petitioner "cannot effectively rely upon a contention that he was unaware of the law." *McMillen v. United States, supra,* 407 A.2d at 605 (citation omitted).

■ Petitioner's excuse for carrying the second gun, which he purchased after his first conviction, was that he thought that, under the "place of business" exception, a license was not required for those who kept a gun in their homes or places of business.[8] The Board properly rejected this argument, and so do we, because the place of business exception does not apply to taxicabs. *United States v. Waters,* 73 F.Supp. 72 (D.D.C.1947), *cause certified,* 84 U.S.App. D.C. 127, 175 F.2d 340, *appeal dismissed,* 335 U.S. 869, 69 S.Ct. 168, 93 L.Ed. 413 (1948). A taxicab is "not a 'place of business' as the term is used in the statute." *Id.* at 73.

All of these assertions were out of place before the Board, just as they are out of place before this court. At most, they were possible defenses (but not good ones) to the criminal charges of carrying a pistol without a license in 1983 and 1984. They cannot be used, as petitioner seeks to use

---

8. D.C.Code § 22–3204 (1981) provides that "[n]o person shall ... carry either openly or concealed on or about his person, except in his dwelling house *or place of business* or on other land possessed by him, a pistol, without a license therefor issued as hereinafter provided

..." (emphasis added). We have held that this "place of business" exception applies only to those who have a "controlling, proprietary or possessory interest in the business premises in question." *Berkley v. United States,* 370 A.2d 1331, 1333 (D.C.1977).

them, as grounds for collaterally attacking either conviction.

## III

Petitioner does not challenge either the validity of the regulations [9] or the procedures followed by the Board in reaching its decision. The record demonstrates that the Board's decision was rationally based on the pertinent regulation, 15 DCMR § 1001.13(c), and on the undisputed facts underlying petitioner's two convictions. *See, e.g., Arthur v. District of Columbia Nurses' Examining Board*, 459 A.2d 141, 146 (D.C. 1983). We therefore hold that the Board did not abuse the discretion vested in it by the regulations when it upheld the denial of petitioner's license application. A cab driver in the District of Columbia may not lawfully carry a gun in his cab. *Berkley v. United States, supra* note 8; *United States v. Waters, supra.* Petitioner's failure to accept this basic principle justifies the Board's refusal to renew his hacker's license on the ground that he lacked "good moral character" as defined by 15 DCMR § 1001.13.

*Affirmed.*

---

9. In *Debruhl v. District of Columbia Hackers' License Appeal Board, supra* note 4, we rejected a due process challenge to a predecessor regulation, materially identical to the present 15 DCMR § 1001.13(c). We held that denying a hacker's license to a parolee was "rationally related to the legitimate objective of securing safe public transportation." 384 A.2d at 426; *accord, Bradford v. D.C. Hackers' License Appeal Board*, 396 A.2d 988, 989 (D.C.), *cert. denied*, 441 U.S. 949, 99 S.Ct. 2174, 60 L.Ed.2d 1053 (1979).