In re SAMUEL P.

No. 92–206–Appeal.

Supreme Court of Rhode Island.

June 17, 1993.

Jeffrey Pine, Atty. Gen., Lauren Sandler Zurier, Sp. Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Barbara Hurst, Asst. Public Defender, for defendant.

## OPINION

FAY, Chief Justice.

This case is before the Supreme Court on appeal by the juvenile defendant, Samuel P., from a Family Court judgment finding him delinquent in possessing an unlicensed handgun pursuant to G.L.1956 (1981 Reenactment) § 11–47–8, as amended by P.L. 1991, ch. 227, § 1.

Testimony from two Providence police officers revealed the following facts. On December 12, 1991, at approximately 2:30 p.m., members of the Providence police department responded to a report that shots had been fired in the vicinity of 218 Sumter Street in Providence. The officers described the building located at 218 Sumter Street as a three-story tenement with both a front and a rear entrance. Upon arriving at this address, the police entered the dwelling through the rear door. The officers proceeded down a hallway and knocked on the door of what they referred to as the "first-floor apartment." An unidentified woman answered the door and denied having any knowledge of the alleged gunfire. The police then climbed a set of stairs, accessible only from the hallway, and knocked on the door of the "second-floor apartment." This so-called apartment was occupied by defendant, three other males, a female, and a child. The occupants permitted the police to enter the premises, which consisted of a kitchen, a living area, and at least one bedroom. The police immediately detected a strong odor of gunpowder in and about the area. While questioning the occupants, the officers conducted a search of the area. The police seized two packages of ammunition that were lying on a bed in one of the bedrooms. One package was filled with .22–caliber bullets. The other package, which contained .32–caliber bullets, had nine bullets missing. After the occupants denied having any knowledge of the existence of a weapon, the police exited from the second-floor apartment.

While leaving the building, the police heard a noise emanating from the second floor and returned upstairs to investigate. When they reached the top of the stairway, they noticed that the attic door, which had been closed during their first visit to the second floor, was now ajar. The police knocked on the door of the second-floor apartment and again were admitted by the occupants. The officers promptly noticed that defendant was no longer present in the kitchen area. After initially denying that defendant had ever been present, the occupants told police that they did not know where defendant had gone. The police then ascended to the attic where they found defendant crouched behind a partition with a .32–caliber, semi-automatic handgun at his feet. The officers arrested defendant and seized the weapon. At trial the parties stipulated that the gun was fully operable and used the same size ammunition that was missing from the box police had confiscated from the second-floor apartment.

The defendant's brother, Waskar P., was the only witness to testify on defendant's behalf. Waskar testified that the dwelling located at 218 Sumter Street was owned by his mother, Romona Nunez (Nunez). Waskar further explained that for the past two years he had lived at this address with defendant, Nunez, his stepfather, his girlfriend, and their child. No one else resided in the tenement.

Waskar testified that on the afternoon of December 12, 1991, two of his friends, Miguel and "Hoochi," stopped by 218 Sumter Street to visit him. Hoochi had brought a gun with him and had been using it to fire shots at a dilapidated car in the backyard. Waskar identified the gun seized by the police as Hoochi's weapon. Waskar stated that shortly before the police arrived, Hoochi disappeared with the gun and returned a few minutes later without it. Waskar assumed that Hoochi had hidden the gun in the attic or in the basement. At this time defendant arrived home from school and had no knowledge that Hoochi had hidden

the gun in the attic. According to Waskar, defendant ran upstairs to the attic when the officers arrived because he was on probation and was afraid of the police.

The trial justice believed that Waskar was merely trying to protect his brother and deemed his testimony "completely unworthy of belief." Relying on the evidence presented by the state, the trial justice found that defendant was in possession of an unlicensed handgun "about his person" on the afternoon of December 12, 1991. The trial justice further opined that defendant was not exempt from liability under the dwelling-house exception to § 11–47–8 because once defendant exited from the second-floor apartment, he was no longer within his dwelling house pursuant to the statutory meaning. According to the trial justice, the hallway and the attic were common areas of the two-family tenement. Therefore, the trial justice concluded that defendant was in violation of § 11–47–8 and sentenced defendant to serve eighteen months at the Rhode Island Training School for Boys. The sentence was suspended for a term of probation pending the outcome of this appeal.

The relevant portion of § 11–47–8 reads,

"No person shall, without a license or permit therefor * * * carry a pistol or revolver in any vehicle or conveyance or on or about his or her person whether visible or concealed, *except in his or her dwelling house* or place of business or on land possessed by him or her." (Emphasis added.)

On appeal defendant contends that he should be exempt from the penalties imposed by § 11–47–8 because he was in his own "dwelling house" when the police discovered him in the attic with the handgun at his feet. The defendant asserts that all the evidence adduced at trial supports the conclusion that the entire tenement located at 218 Sumter Street, including the hallway and the attic, constituted the dwelling house of defendant's family. Although the building may have encompassed two distinct living quarters, defendant claims that there was no evidence to support the infer-ence that defendant's family did not have exclusive control over the entire premises.

The state contends that defendant failed to meet the evidentiary burden imposed upon him by § 11–47–27. Section 11–47–27 reads,

"No negative allegation of any kind need be averred or proved in any complaint under §§ 11–47–1 to 11–47–34, inclusive, and the carrying or use of any firearm contrary to the provisions of said sections shall be evidence that the possession, carrying or use of any such firearm is unlawful, but the respondent in any such case may show any fact that would render the possession, or use, or carrying of such firearm lawful."

The state claims that defendant failed to introduce any credible evidence that demonstrated his family's exclusive control over the common areas of 218 Sumter Street. Accordingly the state avers that defendant was not protected by the dwelling-house exception to § 11–47–8 and asks this court to affirm the Family Court's judgment of delinquency.

Before delving into our analysis of the facts before us, we wish to address the legislative intent underlying § 11–47–8. Statutes such as § 11–47–8 evince a legislative belief that persons carrying unlicensed firearms present a danger to the community. *State v. Paige,* 256 N.W.2d 298, 303 (Minn.1977). However, because individuals have an interest in defending themselves in their own homes, Legislatures enacting similarly worded firearm statutes have exempted persons possessing handguns in their dwelling houses from a licensing requirement. *See Gaulmon v. United States,* 465 A.2d 847, 853 (D.C.App.1983). Courts have therefore been faced with the conflicting task of implementing the dwelling-house exception without thwarting the overall legislative purpose of limiting the possession of unlicensed handguns. In an attempt to walk this fine line, courts have found the dwelling-house exception inapplicable to common areas of a tenement over which a defendant lacks exclusive control. *See id.; Commonwealth v. Seay,* 376 Mass. 735, 742, 383 N.E.2d 828, 832 (1978).

We agree with this exclusive-control test because a landowner's interest in self-defense becomes attenuated and the resulting danger to public safety increases once the holder of an unlicensed weapon passes through the doorway of his or her apartment or house. *Seay*, 376 Mass. at 742–43, 383 N.E.2d at 833.

Thus the central issue before this court is whether defendant's family retained exclusive control over the common hallway and attic of 218 Sumter Street such that it may be considered part of defendant's dwelling house pursuant to § 11–47–8. After reviewing § 11–47–8, in conjunction with § 11–47–27, we answer this question in the affirmative.

■ Although we recognize that § 11–47–27 creates an implication that possession of a handgun in violation of § 11–47–8 constitutes evidence that such possession is unlawful, we wish to point out that such a statutory inference does not relieve the state of its constitutional burden to prove that defendant's possession of the weapon was unlawful. *State v. Neary*, 122 R.I. 506, 409 A.2d 551 (1979). As we held in *Neary*, § 11–47–27 does nothing more than shift the evidentiary burden of production to the defendant. *Id.* at 511–12, 409 A.2d at 555.

> "The statutory inference formulated in § 11–47–27, which places the burden upon a defendant to introduce evidence of circumstances that would render his possession lawful, does no more than require the defendant to raise the issue of justification by evidence peculiarly within his own control and based upon knowledge immediately within his personal reach." *Id.* at 512, 409 A.2d at 555; *see State v. Ballard*, 439 A.2d 1375, 1389–90 (R.I.1982).

Once the defendant has raised the issue of justification and has satisfied the burden of production, the burden of proving beyond a reasonable doubt that the defendant's possession was unlawful shifts back to the state. *Neary*, 122 R.I. at 511–12, 409 A.2d at 555.

Applying the above-stated standard to the facts before us, we are of the opinion that the trial justice erred in finding defendant in violation of § 11–47–8. A review of the trial record satisfies us that defendant met his burden of production. As Waskar indicated in his testimony, the dwelling house located at 218 Sumter Street was owned by his mother. Waskar further testified that the entire structure was occupied exclusively by him and his family, which included his mother, defendant, Waskar's girlfriend, and their child. Additionally, when asked who had access to the attic, Waskar indicated that only members of his family could use the attic without asking permission. The trial justice's ruling that Waskar's testimony was "unworthy of belief" does not detract from the fact that defendant did present evidence that his possession of the unlicensed handgun was lawful. By introducing evidence that 218 Sumter Street was his dwelling house, defendant successfully raised the issue that he was exempt from prosecution under § 11–47–8 and shifted to the state the burden of proving that defendant's possession of the handgun was unlawful.

A further review of the trial record leads us to conclude that the state failed to meet its burden of proving beyond a reasonable doubt that the common hallway and attic of 218 Sumter Street were not part of defendant's dwelling house pursuant to § 11–47–8. The only evidence presented by the state concerning the character of 218 Sumter Street was the testimony of two police officers. The officers described the tenement as a two-family house with one apartment on each floor, a common hallway, a common stairway to the second floor, and an unfinished attic on the third floor. We wish to note, however, that the officers' perception of the building is not a determining factor in discerning the *actual* character of the building. It makes no difference that the house was designed or was once used as a multifamily dwelling. The key issue in this appeal is whether defendant's family, by its use of the building, had exclusive control over the hallway and the attic so as to constitute the premises of a dwelling house pursuant to § 11–47–8. Other than the officers' description

of the house, the state did not present any evidence showing the existence of any tenancies or independent living units within the building. We find that the state failed to present any concrete evidence to support its assertion that the hallway and the attic were common areas not within the exclusive control of defendant's family. Consequently we are of the opinion that the state failed to prove beyond a reasonable doubt that 218 Sumter Street was not a dwelling house pursuant to § 11–47–8. Therefore, regardless of where in the building defendant had possession of the weapon, he did not commit any crime.

Because our treatment of the previous issue is dispositive, we need not address any of the other issues raised by the defendant.

For the reasons stated above, the defendant's appeal is sustained. The Family Court judgment finding the defendant delinquent for violating § 11–47–8 is hereby reversed. The papers in the case are remanded to the Family Court with our decision endorsed hereon.

LEDERBERG, J., did not participate.