DECISION ON DEFENDANT'S MOTION TO DISMISS
Before the Court is the motion of Robert Paolantonio (Defendant), pursuant to Rule 9.1 of the Rhode Island Superior Court Rules of Criminal Procedure, to dismiss Count One of a Criminal Information, charging him with carrying a firearm while intoxicated or under the influence of intoxicating liquor in violation of § 11-47-52 of the General Laws of Rhode Island, 1956, as amended (Reenactment of 2002). For the reasons set forth herein, the Defendant's motion is denied.
 FACTS
On September 23, 2005 the West Warwick Police went to the corner of Orin Street and Morris Street to investigate a complaint of loud music being played. The first officer to arrive determined that the noise was coming from the home at 51 Morris Street. The officer rang the doorbell several times and, through the glass of the front door, observed the Defendant at the top of a stairwell.
When the music stopped, the officer rang the doorbell again. The officer then observed the Defendant retrieve a handgun from a nearby counter and rack the slide backward, thus chambering a round of ammunition. The Defendant proceeded down the stairwell, so the officer took cover behind a rock. The Defendant opened his front door and took a step outside with his left leg, and the officer shouted "Police! Show me your hands!" The officer then observed the Defendant bend down and lower his right hand toward the interior of the home. The Defendant thereafter raised both hands and walked down the front steps of the house. At that point a female, later identified as the Defendant's wife, came to the doorway, partially closed the front door, and disappeared into the house. Moments later, the Defendant's wife exited the house.
Backup police officers arrived, and the Defendant's wife was asked what she did with the gun. She replied "I threw it underneath the bed." Two officers conducted a protective sweep of the home and retrieved a handgun and observed drug paraphernalia and substances believed to be illegal drugs. The Defendant's wife was escorted back into the home and signed a "consent to search" form allowing the police to further search the home for illegal drugs and weapons.
The Defendant was taken to West Warwick Police Station for questioning. During questioning, the Defendant admitted to drinking and smoking marijuana. A subsequent chemical test revealed the Defendant as having a blood alcohol level of .095. The Defendant was charged with a three Count Criminal Information. Count One charged him with carrying a firearm while intoxicated in violation of § 11-47-52. The Defendant now moves this Court to dismiss this Count.
 STANDARD OF REVIEW
When considering a Defendant's motion to dismiss brought pursuant to Rule 9.1 of the Rhode Island Superior Court Rules of Criminal Procedure, this Court must review the information package and attached exhibits to determine "whether there is probable cause to believe that the offense charged was committed and that the accused had committed it." State v. Reed,764 A.2d 144, 146 (R.I. 2001). Authority to do so is vested in the court by G.L. 1956 § 12-12-1.9. "The probable cause standard applied to a Motion to Dismiss is the same as the one that is applied to determine the propriety of an arrest." Id. Our Supreme Court has held that "probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a reasonable person's belief that a crime has been committed and that the person to be arrested has committed the crime." State v. Kryla, 742 A.2d 1178, 1182 (R.I. 1999).
 ANALYSIS
Article 1, section 22 of the Rhode Island Constitution provides that: "the right of the people to keep and bear arms shall not be infringed." The Supreme Court, in Mosby v. Devine,851 A.2d 1031 (R.I. 2004) held that "by its express terms" it could not be denied that Article 1, section 22 recognizes some form of a right to keep and bear arms, but to discern the nature and extent of the right one must look beyond the plain text of the provision.Id. at 1038. The court went on to hold that the right to keep and bear arms was subject to "reasonable regulation by the state in exercising its police power." Id. at 1039. When considering the Firearms Act, the Mosby Court opined "A careful review of the Firearms Act in its entirety reveals an orderly statutory scheme designed to regulate the possession and use of an array of weapons . . ." Id. at 1045.
The Defendant notes that any control he had over his firearm was exercised while he was within his residence and thus argues that licensing and other legislative limitations placed upon an individual's right to possess, carry, or transport a firearm warrant stated or implied exemptions when an individual is within one's residence. The Defendant states that these exemptions recognize and preserve the public policy sought by the legislature in protecting the public from firearms being possessed in public spaces, without needlessly carrying the limitations into one's dwelling. The Defendant points to §11-47-8 and notes that the requirement to obtain a license to carry a pistol or revolver doesn't extend to one's dwelling house, place of business, or land possessed or owned by him. The Defendant states that this so-called "dwelling house exemption" is well-established, and when enacting it, the Legislature made a determination as to what constituted reasonable regulation, weighing the community danger against the rights of individuals to possess firearms.
In support of his "dwelling house exemption" argument, the Defendant directs the Court's attention to French v. State,279 So.2d 317 (Fl.App. 1973). The French Court, after reading individual sections of the Florida firearms statutes, held that the defendant could not be convicted of unlawfully carrying a concealed weapon without a license because he was within his own home. See id. at 318-319. In so finding, the court noted that it was lawful to carry a concealed weapon if one had a license to do so. The court further noted that licensing requirements did not apply to a person possessing arms at his home or place of business. Reading these statutes "in pari material [sic]," the court concluded that the carrying of a concealed firearm in one's own home was not unlawful. The within Defendant adopts this argument that courts are required to read associated statutory sections within an Act in pari materia to effectuate the public purpose of the statute while not creating inconsistent or illogical results. The Defendant thus urges the Court to read §11-47-52, the statute he is charged with violating, in pari materia with § 11-47-8, the statute containing the "dwelling house exemption," and consider the intent of the statutory scheme in total. He proposes that by doing so, consistency between public policy and reasonable regulation can only be served by finding that the proscribed conduct set forth by § 11-47-52 is subject to the same "dwelling house exemption" explicitly identified in § 11-47-8.
The Court is not persuaded by the Defendant's argument. InFrench, that defendant was charged with carrying a concealed weapon. The Florida statutes contained a provision expressly allowing the carrying of a concealed weapon upon obtaining a permit. In construing its statutes, that court merely waived the permit requirement because the defendant was in his home. That case is clearly distinguishable from the one at bar. Here, there is no exception listed to the crime under which the Defendant is charged. To read in a "dwelling house exemption" would be to create an absurd result.
With respect to statutory construction, the Supreme Court has stated a number of guidelines.
 "In construing a statute, [a] court must give effect to all parts of the statute, if reasonably possible, in keeping with its declared purpose. Additionally, the words used must be given their ordinary and customary meaning unless a contrary intention appears on the face of the statute. If the language of a statute is plain and unambiguous and expresses a single, definite, and sensible meaning, that meaning is presumed to be the Legislature's intended meaning and the statute must be interpreted literally." Rhode Island Chamber of Commerce v. Hackett, 411 A.2d 300, 303 (R.I. 1980).
Furthermore, a court "shall not interpret a statute to include a matter omitted unless the clear purpose of the legislation would fail without the implication." State v. Feng,421 A.2d 1258, 1264 (R.I. 1980). It is well settled that "Courts must construe statutes, not redraft them." Estate of Eglee,383 A.2d 586, 588, 119 R.I. 786, 789 (1978).
The enacted statute the Defendant is charged with violating is clear on its face, and the Legislature chose to include no exceptions to it. It is evident that the Legislature did recognize and consider a person's right to bear arms when drafting the Firearms Act because it specifically included the "dwelling house exemption" to the requirement to obtain a license to possess a firearm. That the Legislature did not include this exemption to the statute under which the Defendant is charged is significant. See e.g., Sycamore Properties, LLC v. TabrizRealty, LLC, 870 A.2d 424, 428 (R.I. 2005) ("[W]hen the General Assembly enacts or amends legislation, it is presumed to know the state of the law.") Here the simple and succinct language of the statute clearly evidences the Legislature's intent that it apply under all circumstances.
The Defendant further argues that the statute at issue places an unreasonable restriction upon him. As recognized in Mosby,
the Legislature has enacted a number of provisions regulating the possession and use of weapons. These reasonable regulations have even extended into the home where § 11-47-60.1 requires safe storage of a loaded firearm in a home. In considering the extent of the "dwelling house exemption's" applicability, our Supreme Court in In re Samuel P., 626 A.2d 224 (R.I. 1993), noted that courts had found the exemption inapplicable to common areas of a tenement over which a defendant lacked exclusive control. The Court adopted this exclusive-control test, finding that "a landowner's interest in self-defense becomes attenuated and the resulting danger to public safety increases once the holder of an unlicensed weapon passes through the doorway of his or her apartment or house." Id. at 227.
This Court finds the statute under which the Defendant is charged to be a reasonable regulation. While the Defendant's interest in possessing a firearm is not attenuated here, as it was in Samuel, the staggering increase in danger to public safety clearly warrants a regulation making it unlawful to carry a firearm while under the influence of drugs or alcohol, independent of where a person is located.
In further support of his motion to dismiss, the Defendant, relying on State v. Benevides, 425 A.2d 77,79 (R.I. 1981,) argues that the "carrying" element of the statute under which he is charged is analogous to "possession." He therefore maintains that, under Rhode Island law his possession of a firearm while in his home, even while intoxicated, is permitted. The Defendant thus concludes that the sole means by which § 11-47-52 would be constitutional would be for a statutory interpretation which includes the "dwelling house exemption" within said statute.
The Defendant's argument is unavailing. The terms "carry" and "possession" are not analogous. As noted in Benevides,
"carrying is a form of possession." Id at 79. However, there are many instances of possession, e.g., constructive possession, that do not involve carrying.
Finally, the Defendant argues that the Court must also consider other statutory rights, including the "Castle Doctrine," contained in G.L. 1956 § 11-8-8. That statute generally provides that there is no duty on the part of an owner, tenant, or occupier of a dwelling or place of business to retreat from any person engaged in breaking and entering. The Defendant contends that if the conduct prohibited by § 11-47-52, carrying a gun while intoxicated, extends into one's dwelling, the statute would have the effect of an unreasonable limitation on the right to keep and bear arms. Such an unreasonable limitation would exist, the Defendant contends, because the right to self-defense in one's dwelling would be forfeited upon the lawful consumption of alcohol in one's home.
While the Defendant correctly notes that the "Castle Doctrine" provides a right to use self-defense while in one's home, that right is not limited by the statute under which he is charged. Section 11-8-8 provides that in the event that an intruder is injured or killed, "it shall be rebuttably presumed as a matter of law" that the owner or occupier of the place where the breaking and entering was committed, acted by reasonable means in using self-defense. That a person was intoxicated while acting in self-defense would merely enter into the "reasonableness" equation.
 CONCLUSION
The Defendant's motion to dismiss is denied. The Court finds the statute under which the Defendant is charged to be a reasonable regulation enacted by the state pursuant to its police power. A "dwelling house exemption" should not be read into it.